Joel WASHINGTON, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below),

No. 782S268.

Supreme Court of Indiana.

Nov. 30, 1982.

James R. Fleming, Howard County Public Defender, Kokomo, for appellant.

Linley E. Pearson, Atty. Gen., Carmel L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Joel Washington, was tried without the intervention of a jury and convicted of battery, a class C felony. Ind. Code § 35–42–2–1(3) (Burns 1979 Repl.). In a bifurcated proceeding, the court also found that defendant was an habitual offender. Ind.Code § 35–50–2–8 (Burns 1979 Repl.). He was sentenced to a period of five years in the Indiana Department of Correction for his battery conviction; his sentence was enhanced an additional thirty years by virtue of his status as an habitual offender. In this direct appeal, he presents the following issues for our review:

1. Whether the evidence was sufficient to support the conclusion that defendant knowingly or intentionally touched another person in a rude, insolent, and angry manner;

2. Whether the state proved beyond a reasonable doubt that defendant knowingly, intentionally, and voluntarily waived his right to remain silent and right to counsel before giving a statement to the police;

3. Whether defendant's attorney from a prior felony proceeding was competent to testify at the habitual offender hearing; and

4. Whether the evidence was sufficient to prove that defendant was an habitual offender.

The record reveals that in the early morning hours of February 19, 1980, a dice game took place at "Woodard's Garage" in Kokomo, Indiana. Among those present were defendant and the Holliday brothers—Robert, James, and "Mann." An argument developed between defendant and "Mann" in the course of the betting. The disagreement between the two escalated into a physical altercation which was abruptly ended when "Mann," with the aid of his brothers, broke a thirty-inch long two-by-four over defendant's head.

Defendant went home and, after resting for a while, borrowed a rifle from relatives. Later that morning he proceeded to "Shirley's Lounge," where he encountered James Holliday and struck him two or three times with a pool cue. Shortly thereafter, defendant and Robert Holliday chanced upon each other outside Shirley's Lounge. When Holliday saw defendant, who was carrying the rifle, he began running; defendant fired twice, striking Holliday in the buttocks with one of the shots. Defendant ran to Holliday, who was lying on the ground and pleading for mercy. After a verbal exchange regarding the fight earlier that morning, defendant left and, after returning the rifle to his relative's automobile, went home. That same day, police arrested him at his home and took him to the police station, where defendant gave a statement in which he related the above events. Therein, however, defendant stated that he never aimed the gun at Holliday and that the fact that the bullet struck him was an accident.

## I.

█ Defendant first argues that the evidence was not sufficient to sustain the conclusion that he acted with the intent to touch the victim in a rude, insolent, or angry manner, the elements which must be proven to sustain a conviction for battery. Ind.Code § 35–42–2–1, *supra*. It is well settled that when this Court is confronted with a challenge to the sufficiency of the evidence, it is not our prerogative to weigh the evidence or judge the credibility of witnesses. Rather, as an appellate tribunal, we examine the evidence most favorable to the fact finder's conclusion, together with the reasonable inferences which may be drawn therefrom. If, from that viewpoint, there is substantial evidence to sustain the conclusion that defendant is guilty beyond a reasonable doubt, the verdict will not be disturbed. *Easley v. State,* (1981) Ind., 427 N.E.2d 435; *Schultz v. State,* (1981) Ind., 422 N.E.2d 1176.

Here, the record reveals that following the altercation with the Holliday brothers,

defendant went to his relative's home and borrowed the rifle. He took the rifle with him to "Shirley's Lounge," where he encountered Robert Holliday. When defendant first saw Holliday, he did not have the gun in his possession; he retrieved the gun from his automobile and pursued Holliday. As Holliday attempted to flee, defendant fired two shots in his direction.

█ The jury could have concluded that the shooting was accidental, as defendant maintained. The jury found otherwise, however. It is well established that a trier of fact may employ reasonable inferences based upon an examination of the circumstances surrounding an act to conclude it was committed with the requisite intent. *Norris v. State,* (1981) Ind., 419 N.E.2d 129; *Williams v. State,* (1979) Ind., 395 N.E.2d 239. Based on the course of conduct in which the defendant engaged and his ultimate use of the deadly weapon, the jury's conclusion that he intended to strike the victim with the bullet cannot be disturbed. *Id.; Parker v. State,* (1981) Ind.App., 424 N.E.2d 132; *Padgett v. State,* (1978) 177 Ind.App. 469, 380 N.E.2d 96. The fact that defendant did not further harm Holliday after he approached the fallen victim does not render the jury's verdict improper. *Cf., State v. Smith,* (1980) Ind.App., 409 N.E.2d 1199 (abandonment).

## II.

During the state's examination of Kokomo City Police Officer George Weir, the state sought to introduce the statement which defendant gave to police the day of the shooting. Defendant objected to the introduction of the statement, arguing it had not knowingly and voluntarily been given. A hearing was held on defendant's objection and motion to suppress. The court then overruled the objection and motion, and the statement was introduced.

Defendant here renews his contention that the statement was improperly admitted. He maintains that due to the blow to his head sustained earlier that day, he was disoriented and suffering headaches at the time he gave and signed the statement. He

**1358**

so testified at the hearing on his objection and motion. As tangible evidence of his condition, he points to the character of his signature on the waiver of rights form; he characterizes the handwriting as "wavery." In the face of this evidence, he maintains the state did not sustain its burden to show that the statement was knowingly and voluntarily given, as is necessary to render it admissible. *See generally, Brown v. Illinois,* (1975) 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416; *Richey v. State,* (1981) Ind., 426 N.E.2d 389. Defendant conceded, however, that no threats or promises were employed to gain his signature on the waiver of rights form and statement.

■ As in Issue I, our analysis is governed by a venerable standard of review. We do not weigh the evidence or judge the credibility of witnesses in reviewing a trial court's ruling on the admission of a confession or incriminating statement. We examine only the evidence and reasonable inferences therefrom which are favorable to the court's ruling, together with any uncontradicted adverse evidence. If, from that viewpoint, there is substantial evidence to support the court's ruling, it will not be disturbed. *Richey v. State, supra; Combs v. State,* (1978) 267 Ind. 578, 372 N.E.2d 179.

■ Police Officer Weir, who advised defendant of his rights and was present during the execution of the written waiver and statement, testified that defendant did not seem dizzy or woozy at the time. Weir acknowledged that defendant had a bump on his head and that at some point during the day, he had given two aspirins to defendant. Nonetheless, he testified that defendant appeared to have total control of himself. He stated that he had noticed nothing to suggest otherwise in the character of defendant's handwriting; when asked to examine the handwriting in court, he reiterated his conclusion that the handwriting did not suggest defendant's cognitive faculties were impaired.

We note that while defendant describes his signature on the rights form and statement as "wavery," the handwriting appears evenly-penned and entirely legible. Based on the subjective and conflicting evidence presented, the trial court did not necessarily err when it concluded that defendant knowingly, intelligently, and voluntarily waived his rights and gave the statement. *Powell v. State,* (1982) Ind., 437 N.E.2d 969; *Bean v. State,* (1978) 267 Ind. 528, 371 N.E.2d 713; *George v. State,* (1979) Ind.App., 397 N.E.2d 1027.

### III.

During the habitual offender phase of the proceedings, the state introduced the testimony of Dennis Parry, an attorney, to establish the existence of defendant's two prior unrelated felonies. Parry testified that he had represented defendant in 1974, in a criminal defense capacity; he stated that the cause had culminated in defendant's conviction for the crime of assault and battery with the intent to kill, which was a felony at that time. Parry also testified that in 1976, during his tenure as Howard County Prosecutor, he had prosecuted defendant and obtained a conviction for forgery, a felony at that time. That conviction, he testified, was obtained on February 19, 1976.

At the outset of the hearing, defendant objected to Parry's testimony for the reason that his testimony regarding the 1974 conviction would violate the confidential relationship between attorney and client. Defendant argued that Parry's testimony was unnecessary, since the proof was available in the form of certified records. The objection was overruled.

■ Defendant here renews his contention that Parry was improperly permitted to testify. An attorney, of course, has a legal and ethical duty to maintain the confidences and secrets of a client, both during and subsequent to the attorney-client relationship. Ind.Code § 34-1-60-4 (Burns 1973); Code of Professional Responsibility, Ethical Canon 4-1 *et seq.* Here, however, the attorney revealed no confidential communications or secrets of his former client. The matters which were the subject of his testimony—the existence, nature, and date

of his prior convictions—were purely clerical matters documented on the public record. The attorney's testimony did not extend beyond these summary and public matters regarding the convictions, and it consequently did not violate Ind.Code § 34–1–60–4, *supra,* or our ethical canons. The objection was properly overruled. *See generally, Colman v. Heidenreich,* (1978) 269 Ind. 419, 381 N.E.2d 866.

## IV.

The only evidence which the state presented to establish the existence of defendant's status as an habitual offender was the oral testimony of Dennis Parry. Defendant maintains this evidence was insufficient to establish the existence of two prior unrelated felonies, as necessary to find that he qualified for treatment as an habitual offender. *See* Ind.Code § 35–50–2–8 (Burns 1982 Supp.).

In the brief defendant filed with this Court, his sufficiency argument was predicated upon the contention that the evidence did not reveal that the conviction and sentencing on the first felony was completed prior to the commission of his second felony, as is required to sustain an habitual offender finding. *Wells v. State,* (1982) Ind., 437 N.E.2d 1333; *Miller v. State,* (1981) Ind., 417 N.E.2d 339. In response, the state argues that the habitual offender finding could be sustained on the inference that attorney Parry's defense of defendant on the 1974 conviction and his prosecution of defendant on the 1976 conviction, if overlapping in time, would have constituted an impermissible conflict of interest.

After these briefs had been filed, this Court held in *Morgan v. State,* (1982) Ind., 440 N.E.2d 1087,[1] that where it is not shown that properly certified records are unavailable, parol evidence alone is insufficient to establish a defendant's status as an habitual offender. There we stated:

"The requirement of the law that such records be kept reflects the monumental interest of society in the maintenance of accurate and reliable evidence of such matter. To countenance proof of such an important matter as a prior conviction in a criminal trial upon parol evidence alone from witnesses who have observed the judicial proceedings, resulting in it, is counter to our entire perspective on the subject. We, therefore, hold that parol evidence standing alone is insufficient evidence of the fact of prior convictions in the absence of a showing of the unavailability of the proper certified records. Here, no such records were introduced, and there was no indication that the State was unable to produce them. The additional thirty year term imposed under Ind.Code § 35–50–2–8 cannot stand on the evidence submitted, and defendant's conviction on that charge must be reversed." *Id.,* 440 N.E.2d at 1090–1.

Here, there was no indication that the proper certified records were unavailable; in fact, Parry's testimony suggested just the contrary. The circumstances present here point up the wisdom of our *Morgan* ruling. The state suggests that the thirty year sentence imposed on defendant should be upheld on an inference, even though there is no direct testimony that Parry represented defendant through his sentencing on the 1974 felony or that he, from the outset,

---

1. Nine days after *Morgan v. State, supra,* was decided, defendant filed a "supplemental brief" in which he argued that pursuant to "*Morgan* and on the grounds alleged in defendant's original brief," the habitual offender judgment and sentence should be reversed. Thereafter, the state filed a motion to strike the "supplemental brief" for the reason that "new issues" were raised therein. We disagree. At trial, defendant maintained that the proper certified records were available and should be introduced. In his original appellate brief, he argued the evidence was insufficient to support the habitual offender finding. There, he noted that—as was true at the time he filed the initial brief—there existed no precedent regarding habitual offender findings based solely on parol evidence.

*Morgan v. State, supra,* is inextricably intertwined with the question whether the evidence was sufficient to support defendant's habitual offender finding, as our subsequent textual analysis reveals. Consequently, we deny the state's motion to strike the "supplemental brief," regarding it primarily as a submission of additional authority which may be filed "by either party at any time." Ind.R.App.P. 8.4.

prosecuted defendant for the crime which culminated in the second felony conviction in 1976. The inference proffered by the state lacks a tangible evidentiary basis; just as we found similar evidence inadequate in *Wells* and *Miller,* so also does the state's argument defy the rationale underlying our decision in *Morgan.*

We consequently conclude that the habitual offender finding and the sentence imposed thereon must be vacated. *Morgan v. State, supra; Wells v. State, supra; Miller v. State, supra.* As in *Morgan v. State, supra,* which we note was decided subsequent to the instant proceedings, the cause is remanded for a new hearing on the habitual offender count by reason of the trial court's ruling on defendant's objection, which embodied the contention that the proper mode of proof was certified records, rather than oral testimony. *Morgan v. State, supra; see also, Turpin v. State,* (1982) Ind., 435 N.E.2d 1. We note that this Court has held that it is proper to re-try a defendant on an habitual offender count in front of a new fact finder following the reversal of a finding on that count. *Id.; see also, State v. McMillan,* (1980) Ind., 409 N.E.2d 612.

For all the foregoing reasons, the judgment and sentence imposed on defendant's conviction for battery, a class C felony, are hereby affirmed. The cause is remanded to the trial court with instructions to vacate the habitual offender finding and sentence and to grant a new trial on that count.

The cause is remanded for further proceedings not inconsistent with this opinion.

GIVAN, C.J., and DeBRULER and PIVARNIK, JJ., concur.

PRENTICE, J., concurs in part and dissents in part with statement.

PRENTICE, Justice, concurring in part, dissenting in part.

I concur in the majority decision except insofar as it remands the habitual offender count for retrial. In this regard, I dissent for the same reasons set forth in my concurring and dissenting opinion in *Morgan v. State,* (1982) Ind., 440 N.E.2d 1087 at 1091. Just as in *Morgan,* I think it cannot be said that the State was not given "one fair opportunity to offer whatever proof it could assemble" of Defendant's habitual criminal status, and upon authority of *Burks v. United States,* (1978) 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1, I would remand the case to vacate the verdict upon the habitual offender count and to re-sentence the defendant.