James L. WILSON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–9302–CR–00045.

Court of Appeals of Indiana,
Fifth District.

June 13, 1994.

Aaron E. Haith, Indianapolis, for appellant.

Pamela Carter, Atty. Gen. of Indiana, Arthur Thaddeus Perry, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

SHARPNACK, Chief Judge.

James L. Wilson appeals from his convictions of attempted murder and carrying a handgun without a license. We affirm.

Wilson raises the following restated issues for our review:

1. whether the trial court erred in denying Wilson's motion to exclude witnesses;

2. whether the trial court's instruction on the offense of attempted murder constituted fundamental error;

3. whether Wilson's conviction of attempted murder is supported by sufficient evidence; and

4. whether Wilson's sentence is manifestly unreasonable.

The facts most favorable to the judgments of conviction are as follows. At approximately 8:30 p.m. on November 19, 1991, off-duty police officer Frank D. Poskon was clearing leaves from the street in front of his home in the area of 46th and Delaware Streets in Indianapolis, Indiana. Poskon noticed a group of male youths with bicycles, standing on the sidewalk on the north side of 46th Street. Poskon's attention was drawn to the group because a bicycle had been stolen recently from Poskon's property. One of the youths, Michael Howard, started moving toward an unattached garage area between two residences; Howard's crouching movements suggested that he wanted to avoid detection. When Poskon started to cross 46th Street, he said "Hey! What's up guys?" in a facetious tone. Record, p. 205. As Poskon continued across the street, he realized that one of the youths had a gun. Poskon went for cover in a nearby yard when he heard one of the youths state, "You want pop, mother fucker?" Record, p. 208. Poskon was then shot in the back. Poskon turned around as he continued to move for cover and saw Wilson, who was ten to fifteen yards away, aim the gun and shoot at him again. The second bullet missed Poskon, passing by his ear.

Poskon took cover in a neighbor's yard. After waiting a few moments, he looked around and saw that the youths had departed. Poskon went to his house and reported the incident to Indianapolis Police Department communications. Several police units arrived and a perimeter was set up around the area. Eventually, Howard was apprehended after police dogs found him hiding in a garage. Based on information obtained

through interviews with several individuals, police arrested Wilson approximately four days after Poskon was shot. Poskon later identified Wilson from a six-picture photo array as the youth that had shot him.

At Wilson's trial, Howard testified that he, Wilson, and three other youths were riding bikes together on the evening in question. Howard decided to take a bicycle when his own bicycle's tire tore. Howard's uncle, Albert Taylor, testified that he had sold a .22 caliber gun to Wilson sometime during the end of October or beginning of November, 1991. Ronald Mathis was one of the other youths in the group with Howard and Wilson. Mathis testified that when Poskon approached the group Wilson said that he would "pop" him, meaning that he would shoot him. Mathis saw Wilson shoot Poskon.

Testifying on his own behalf, Wilson confirmed that he was carrying an unlicensed .22 revolver on the night that Poskon was shot. Wilson claimed, however, that he had handed the gun to Mathis and that Mathis shot Poskon.

I

The first issue Wilson raises for our review is whether the trial court erred in denying Wilson's motion to exclude State's witnesses Mathis and Taylor.

■ With respect to Mathis, the record reveals the following. In August, 1992, defense counsel filed a notice of depositions with regard to State's witnesses Michael Truth, Tyree Gross, and Mathis. Each of these witnesses twice failed to appear for their depositions. Prior to trial, Wilson moved to strike witnesses Truth, Gross, and Mathis. On September 11, 1992, a hearing was conducted on the motion; no ruling on the motion was made, however, as it was unclear if the witnesses would appear to give testimony at trial.

On September 14, 1992, Wilson's trial began. Wilson's motion to strike became moot as to Truth and Gross because neither appeared to testify. The prosecutor's office was still making attempts to locate Mathis; thus, Wilson's motion to strike was kept under advisement as to Mathis. After the trial

court issued a bench warrant for his arrest, Mathis appeared on the second day of trial. A hearing was conducted on Wilson's pending motion to strike Mathis. Defense counsel argued that Mathis should be stricken as he had failed to appear for two scheduled depositions. Although Wilson's attorney noted that he had spoken with Mathis for approximately ten minutes that morning, he requested that the court strike the witness. When asked how much additional time he needed to speak with Mathis, Wilson's attorney expressed that he preferred to depose the witness. The State countered by arguing that a record had been established regarding the difficulties in locating Mathis, that the defense had been in possession of Mathis' statement for a long time, that there was no evidence that Mathis was going to testify contrary to his statement, and that Wilson could use Mathis' statement for cross-examination and impeachment purposes.

Wilson's attorney informed the trial court that during his ten-minute conversation with Mathis, the information obtained from Mathis was not significantly different than that contained in his statement, but that he had not had time to go into detail regarding the statement. The record reveals that the following then transpired:

"THE COURT: Before he testifies, would you like to have an opportunity to speak with him a little bit longer?

[DEFENSE]: Yes, your Honor, I would.

THE COURT: We will take a short recess to give you the opportunity then to speak further with Mr. Mathis.

THE COURT TAKES A BRIEF RECESS.

THE COURT RECONVENES.

THE COURT: Back on the record ... [defense counsel], have you now had additional time to speak to the Witness Mathis?

[DEFENSE]: Yes, your Honor, I have.

THE COURT: And has he relayed anything differently than what was previously in his statement?

[DEFENSE]: He's related additional information—not significantly different.

He's given several statements in this matter that are different.

THE COURT: And you have all those statements?

[DEFENSE]: Yes, Judge."

Record, pp. 401–03. The trial court then denied Wilson's motion to strike Mathis.

With regard to Taylor, the record reveals the following. A week and a half prior to Wilson's trial, Taylor contacted an investigating officer, Detective Benton, indicating that he had information about the case. The prosecutor's office instructed Benton to interview Taylor before Benton left on vacation. Benton, however, did not interview Taylor before leaving. Upon returning from vacation, Benton interviewed Taylor and Taylor's statement was transcribed in less than twenty-four hours. Defense counsel and the prosecutor each received a copy of Taylor's statement on Friday; Wilson's trial commenced on the following Monday. During a colloquy on Wilson's motion to strike Taylor, defense counsel confirmed that he had received a copy of Taylor's statement on the Friday before trial, that he spoke with Taylor that same evening, that he was aware of what Taylor's testimony would be, and that he had received certain jail records needed to impeach Taylor's expected testimony. The trial court then denied Wilson's motion to strike and asked whether the defense wanted a continuance in order to depose Taylor. The defense declined the court's offer for a continuance.

In *Wiseheart v. State* (1986), Ind., 491 N.E.2d 985, our supreme court wrote:

"When evidence which should have been disclosed to the defendant during discovery is revealed for the first time at trial, the defendant has two remedies: move for a continuance or move for exclusion of the evidence. *Averhart v. State* (1984), Ind., 470 N.E.2d 666. In describing the availability of these two alternatives, Justice Pivarnik wrote:

Exclusion of evidence, however, is usually invoked *only* when the State has blatantly and deliberately refused to comply with the Court's discovery order. The usual remedy is to allow the defen-

dant a continuance in order to examine and meet the new evidence. *Murray v. State* (1985), Ind., 479 N.E.2d 1283, 1287. Exclusion is appropriate only when it is the sole remedy which avoids substantial prejudice to the defendant's rights. *Coppock v. State* (1985), Ind., 480 N.E.2d 941."

*Wiseheart,* 491 N.E.2d at 988. In the present case, we find no evidence of blatant or deliberate noncompliance on the part of the State.

As Wilson concedes, with regard to both Mathis and Taylor, the trial court's action was all that was required under the law to ensure that Wilson received a fair trial. *Richardson v. State* (1979), 270 Ind. 566, 388 N.E.2d 488, 490. Wilson argues, however, that the law operates to deny defendants of fundamental due process and violates principles of equal protection. "Wilson does not argue that the trial court did not follow the law as it now exists ... but asserts that [the] law grants a greater and unequal right to the State contrary to the intent of the [Indiana] Constitution." Appellant's brief, p. 19. Wilson asserts that if Mathis and Taylor had been defense witnesses, the State's motion to strike would have been granted. Wilson refers us to a memorandum decision issued by this court to support this assertion and "to demonstrate how the particular trial court handles violations of discovery procedures when it is the Defendant who has last minute, unlisted ... witnesses...." Appellant's brief, p. 24.

■ We agree with the State that this type of citation to a memorandum decision is improper and not allowed under the appellate rules. *See* Ind.Appellate Rule 15(A)(3). Further, we find Wilson's argument to be unpersuasive. As noted in *Wiseheart,* the same rules of law apply whether it is the State or a criminal defendant moving to strike witnesses following noncompliance with discovery. 491 N.E.2d at 990–92.

■ Finally, Wilson contends that if this were a civil case, a court of review "more likely than not" would have affirmed the trial court's grant of a motion to exclude witnesses. Appellant's brief, p. 24. As noted by the

State, "[t]he fact that granting the motion to strike, whether in a civil or criminal case, might be affirmed on appeal ... does not mean that granting [Wilson's] motion to strike was mandatory." Appellee's brief, p. 8.

The trial court did not err in denying Wilson's motion to strike State's witnesses Mathis and Taylor.

## II

■ The next issue Wilson presents for our review is whether the trial court's instruction on the offense of attempted murder constituted fundamental error. The court gave the following final instruction:

"INSTRUCTION NUMBER 15

ATTEMPT MURDER

A PERSON ATTEMPTS TO COMMIT A CRIME WHEN HE KNOWINGLY OR INTENTIONALLY ENGAGES IN CONDUCT THAT CONSTITUTES A SUBSTANTIAL STEP TOWARD THE COMMISSION OF THE CRIME.

AN ATTEMPT TO COMMIT A CRIME IS A FELONY OR MISDEMEANOR OF THE SAME CLASS AS THE CRIME ATTEMPTED.

THE CRIME OF MURDER IS DEFINED BY STATUTE AS FOLLOWS:

A PERSON WHO KNOWINGLY OR INTENTIONALLY KILLS ANOTHER HUMAN BEING COMMITS MURDER.

TO CONVICT THE DEFENDANT OF ATTEMPTED MURDER, THE STATE MUST HAVE PROVED EACH OF THE FOLLOWING ELEMENTS:

THE DEFENDANT JAMES L. WILSON

1. KNOWINGLY OR INTENTIONALLY

2. ENGAGED IN CONDUCT BY KNOWINGLY SHOOTING A DEADLY WEAPON; TO–WIT A HANDGUN AT AND AGAINST THE PERSON OF FRANK DEWEY POSKON. [sic]

3. WHICH CONDUCT CONSTITUTES A SUBSTANTIAL STEP TOWARD THE KNOWING OR INTENTIONAL KILLING OF ANOTHER HUMAN BEING.

IF THE STATE FAILED TO PROVE EACH OF THESE ELEMENTS BEYOND A REASONABLE DOUBT, THE DEFENDANT SHOULD BE FOUND NOT GUILTY.

IF THE STATE DID PROVE EACH OF THE ELEMENTS BEYOND A REASONABLE DOUBT, THEN YOU SHOULD FIND THE DEFENDANT GUILTY OF ATTEMPTED MURDER, A CLASS A FELONY."

Record, p. 107. As Wilson notes and the State concedes, an almost identical instruction was disapproved by our supreme court in the case of *Hill v. State* (1993), Ind., 615 N.E.2d 97. In that case, the court wrote:

"In *Spradlin v. State* (1991), Ind., 569 N.E.2d 948, 950, ... this Court stated:

that an instruction which purports to set forth the elements which must be proven in order to convict of the crime of attempted murder must inform the jury that the State must prove beyond a reasonable doubt that the defendant, with the intent to kill the victim, engaged in conduct which was a substantial step toward such killing.

The requirements set out in *Spradlin* are those which the trial court should apply in instructing a jury, and which we will apply when we review an instruction on attempted murder.

\*   \*   \*   \*   \*   \*

Attempted murder is a specific intent crime and the jury must be so instructed. [citations omitted]. Although a person may be convicted of murder upon proof that he acted 'knowingly,' he may not be convicted of attempted murder without proof that he acted with the intent to kill. The present instruction did not inform the jury that the State must prove that [appellant], at the time he shot the victim, intended to kill the victim, but, rather, the instruction permitted the jury to convict on the lesser intent of 'knowingly.' Because the instruction did not include the proper

element of intent, it failed to instruct the jury on an essential element of the crime of attempted murder and was, therefore, erroneous."

*Hill,* 615 N.E.2d at 98–99. Thus, we agree with Wilson that Instruction No. 15 in the present case was erroneous. Our analysis does not end here, however, because Wilson did not object to the giving of Instruction No. 15 or tender his own instruction on the specific intent to kill element of the crime of attempted murder. Consequently, the State argues that Wilson has waived any error because giving Instruction No. 15 did not constitute fundamental error in the present case. *See, e.g., Wilkins v. State* (1981), Ind. App., 426 N.E.2d 61, 64 ("where the giving of an instruction is not fundamental error any right to complain is waived by failure to object to the instruction at trial"). Accordingly, we must determine whether giving Instruction No. 15 constituted fundamental error.

■ In the case of *Brown v. State* (1992), Ind.App., 587 N.E.2d 693, this court reviewed prior opinions from the Indiana Supreme Court and wrote:

"These cases suggest that fundamental error results 1) when the jury instructions on attempted murder completely fail to refer to the element of intent to kill; and 2) when the instructions leave the impression that intent to engage in the conduct leading to the risk of death alone is sufficient to convict on a charge of attempted murder. On the other hand, instructions which imperfectly instruct on the element of intent to kill but which do not affirmatively mislead the jury are erroneous but not fundamental error, and are therefore subject to waiver. An instruction which refers to the element of intent by stating that the defendant must 'attempt to kill', rather than 'intend to kill', the victim appears to be an example of an imperfect but not fundamentally erroneous instruction."

*Id.* at 696.

In our determination of whether the giving of Instruction No. 15 constituted fundamental error, we consider the instructions taken as a whole, and may include the charging information in our review where, as here, the

charging information was read to the jury. *Price v. State* (1992), Ind., 591 N.E.2d 1027, 1029. The amended information in this case was included in the court's preliminary Instruction No. 3 and alleged, in pertinent part, that:

"James L. Wilson, on or about November 19, 1991, did attempt to commit the crime of Murder, that is, the said James L. Wilson did *knowingly and intentionally attempt to kill* another human being, that is: Frank Dewey Poskon, by engaging in conduct, that is: knowingly firing a handgun at Frank Dewey Poskon, striking Frank Dewey Poskon in the back, which constituted a substantial step toward the commission of said crime of Murder."

Record, pp. 93–94 (emphasis added).

Although the amended information did not allege that Wilson acted "with the intent to kill," it alleged that Wilson "did knowingly and intentionally attempt to kill" Poskon. Instructions which use the terms "attempt to kill" rather than "intend [or 'intent'] to kill" are erroneous, but do not constitute fundamental error. *H. Jackson v. State* (1991), Ind., 575 N.E.2d 617, 620–21; *Allen v. State* (1991), Ind., 575 N.E.2d 615, 617, *denial of habeas corpus aff'd,* 6 F.3d 458 (7th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1106, 127 L.Ed.2d 417; *cf., R. Jackson v. State* (1989), Ind., 544 N.E.2d 853. In *H. Jackson,* the supreme court wrote: "While 'attempting to kill' is not synonymous with 'intending to kill,' ... by finding that the defendant was attempting to kill [the victim] when he shot him, it was logically necessary for the jury to find that he intended to kill him." 575 N.E.2d at 621.

The jury also received a separate instruction, Instruction No. 19, covering intent to kill:

"INSTRUCTION NUMBER 19

THE INTENT TO KILL CAN BE FOUND FROM THE ACTS, DECLARATIONS, AND CONDUCT OF THE DEFENDANT AT OR JUST IMMEDIATELY BEFORE THE COMMISSION OF THE OFFENSE, AND FROM THE

CHARACTER OF THE WEAPON USED."

Record, p. 113.

Thus, in addition to receiving Instruction No. 15, the jury was instructed that the State alleged that Wilson "did knowingly and intentionally attempt to kill" Poskon, and that the intent to kill could be found from Wilson's acts, declarations, and conduct, as well as from the character of the weapon used.

From our review of the instructions in the present case, we conclude that the jury was imperfectly instructed on the intent to kill element, but not affirmatively misled; therefore, the giving of Instruction No. 15 did not constitute fundamental error, and Wilson has waived any objection to that instruction. *cf., Smith v. State* (1984), Ind., 459 N.E.2d 355, 356–58.

### III

The next issue Wilson presents for our review is whether his conviction of attempted murder is supported by sufficient evidence. Specifically, Wilson contends that the evidence was insufficient that he intended to kill Poskon. Wilson contends further that a "reasonable person should have entertained some reasonable doubt as to whether he was the shooter." Appellant's brief, p. 32.

When we review the evidence supporting a conviction, we may not reweigh the evidence or judge the credibility of the witnesses. *Washington v. State* (1982), Ind., 441 N.E.2d 1355, 1358. Where the evidence is in conflict, we are bound to view only that evidence which is most favorable to the verdict and judgment of the trial court. *Id.* If there is any substantial evidence supporting the judgment, we must affirm. *Hutchinson v. State* (1985), Ind., 477 N.E.2d 850, 855.

■ Wilson's contention that "[n]othing in the evidence, even circumstantially, suggests that Wilson possessed or formed an intent to kill ..." is without merit. Appellant's brief, p. 31. A jury may infer the intent to kill "from the use of a deadly weapon in a manner likely to cause death or great bodily harm." *Conley v. State* (1983), Ind., 445 N.E.2d 103, 105. Whether the victim actually sustains serious bodily injury is irrelevant.

*Lamotte v. State* (1986), Ind., 495 N.E.2d 729, 733. In the present case, the evidence most favorable to the conviction establishes that when Poskon approached the group, Wilson said that he would "pop" him, meaning that he would shoot him. Wilson then shot Poskon in the back with a handgun, and shot at Poskon a second time at a range of approximately ten to fifteen yards. The second shot missed Poskon, passing by his ear. This evidence was sufficient for a jury to conclude that Wilson intended to kill Poskon. *See, e.g., Jones v. State* (1989), Ind., 536 N.E.2d 490, 491–92; *Conley*, 445 N.E.2d at 105.

■ Wilson also contends that the evidence identifying him as the shooter was insufficient. In support of this contention, Wilson asserts that the testimony of Mathis and Taylor was inherently improbable.

As Wilson acknowledges,

"[t]he weight of the evidence, the credibility of the witnesses, and the ultimate guilt or innocence of the accused are to be determined by the trier of fact. [citations omitted]. This Court will override the jury's assessment of credibility only where the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it."

*Shippen v. State* (1985), Ind., 477 N.E.2d 903, 904. Wilson does not specify with any particularity which aspects of the testimony from Mathis and Taylor are inherently improbable. Upon review of their testimony, we find no justification for invading the province of the jury. As noted by the State, each of these witnesses were subjected to rigorous cross-examination by the defense regarding inconsistencies between their prior statements to police and their testimony at trial, as well as any underlying motives for testifying. It was for the jury to determine the credibility of these two witnesses.

■ Wilson turns next to the testimony of Poskon on the question of identification. Wilson points to various factors going to the weight of Poskon's identification testimony, such as Poskon's testimony that the night of the shooting he told Benton that things were "fuzzy" and that he might not be able to identify the shooter, that the shooting hap-

pened at night in an area lighted only by street lights, and that Poskon did not see who fired the first shot, etc. Wilson invites us to reweigh the evidence, an invitation which we are not free to accept. *Washington,* 441 N.E.2d at 1358. Poskon immediately identified Wilson as the shooter when he viewed the six-picture photo array, and identified Wilson in court as the person who shot him. Additionally, Mathis testified that he saw Wilson shoot Poskon. Although Wilson claimed that Mathis was the shooter, it was for the jury to determine whether to believe Poskon and Mathis, or to believe Wilson. *Cuppett v. State* (1983), Ind., 448 N.E.2d 298, 300, *denial of habeas corpus aff'd,* 8 F.3d 1132 (7th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1226, 127 L.Ed.2d 571 (1994).

Wilson's conviction of attempted murder is supported by sufficient evidence.

## IV

The final issue Wilson presents for our review is whether the forty-year sentence imposed by the trial court on Wilson's attempted murder conviction is manifestly unreasonable.

Ind.Appellate Rule 17 sets forth the standard for appellate review of sentences. The court has interpreted this rule (then Rule 2 of the Ind.Rules of Appellate Procedure) as providing for a two-tiered standard of review. *Fointno v. State* (1986), Ind., 487 N.E.2d 140. Quoting the court of appeals in *Cunningham v. State* (1984), Ind.App., 469 N.E.2d 1, 8, the court stated:

> "[W]e perceive a two-step appellate procedure in this area. We will review a sentence on appeal only when at first blush the sentence imposed appears to be 'disproportionate,' that is, 'manifestly unreasonable in light of the nature of the offense and the character of the offender.' If after review we determine 'no reasonable person could find such sentence appropriate to the particular offense and offender,' we will revise the sentence on appeal so as to make such sentence appropriate."

*Fointno,* 487 N.E.2d at 145.

■ Wilson argues first that the trial court's sentencing statement was inadequate.

In *Mills v. State* (1989), Ind., 536 N.E.2d 290, our supreme court stated:

> "Ind.Code § 35–38–1–3 requires that if the trial court finds aggravating or mitigating circumstances, its record must include 'a statement of the court's reasons for selecting the sentence that it imposes.' The statement of reasons should contain three elements: a) identification of all significant mitigating and aggravating circumstances found, b) specific facts and reasons which lead the court to find the existence of each such circumstance, and c) articulation demonstrating that the mitigating and aggravating circumstances have been evaluated and balanced in determination of the sentence."

*Id.* at 291. "Only one aggravating factor is necessary to enhance a sentence." *Moore v. State* (1991), Ind.App., 569 N.E.2d 695, 699, *trans. denied.*

We disagree with Wilson's assertions that the trial court's statement in this case does not comply with the elements described in *Mills* or reflect a balancing of mitigating and aggravating circumstances. The trial court's sentencing statement provides, in pertinent part:

> "The Court has read the presentence, did hear the testimony that was given during the trial and has heard comments made today. The Court does find that there are aggravating circumstances in that the Defendant, as a juvenile, has been arrested and convicted 6 times from March 25, '87 to the present time. Secondly, that the Defendant has been placed on probation 4 times and had been violated from his probation 3 times. The Court would be of the opinion that anything lesser [sic] of a sentence would, in fact, depreciate the seriousness of the crime. The Court does find mitigating circumstances in the fact that this is the Defendant's first adult felony conviction, and also the fact that the Defendant is 19 years of age. The court does find that the aggravating circumstances outweigh the mitigating circumstances, and would sentence the Defendant as to Count One, a period of 40 years; as to Count Three, a period of 1 year, which will run concurrently with Count One."

Record, pp. 512–13. The trial court's sentencing statement comports with the requirements of *Mills* and reflects the court's balancing of mitigating and aggravating factors.

██ Wilson also argues that the trial court's sentencing statement does not reflect the trial court's consideration of the likelihood of Wilson's rehabilitation. Again, we disagree. The trial court's statement notes Wilson's numerous prior convictions and probation violations, factors indicating that Wilson had not benefitted from the rehabilitative opportunities provided by the juvenile justice system. Additionally, the trial court noted its consideration of the presentence report which included, among other statements regarding prior failed attempts at rehabilitating Wilson, the following commentary: "From a correctional standpoint, the defendant would appear to be a poor candidate for anything other than a lengthy executed sentence. Having had several opportunities for rehabilitation in the juvenile justice system, the defendant has obviously failed to take advantage of these...." Record, p. 151. The record adequately establishes that the trial court considered rehabilitation in sentencing Wilson. *See Kubiak v. State* (1987), Ind.App., 508 N.E.2d 559, 562 (fact of trial court's consideration of rehabilitation in sentencing may be implicit in the record).

██ Finally, Wilson argues that the trial court may have been unduly influenced by Poskon's victim impact statement at sentencing. There is no evidence, however, to suggest that the trial court was influenced by Poskon's statement.

We hold that the trial court's imposition of a forty-year sentence on Wilson's attempted murder conviction is supported by the record and is not manifestly unreasonable.

The trial court is affirmed in all respects.

AFFIRMED.

FRIEDLANDER and RUCKER, JJ., concur.