**Sanford SWANSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 71A05–9408–CR–324.**

Court of Appeals of Indiana, Fifth District.

April 27, 1995.

Julie P. Verheye, Mishawaka, for appellant.

Pamela Carter, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

SHARPNACK, Chief Judge.

Sanford Swanson appeals his conviction of criminal conversion. We affirm.

Swanson raises one issue on appeal, which we restate as whether the State produced sufficient evidence of intent to support the trial court's judgment.

The facts most favorable to the judgment show that on February 13, 1993, Jerry Barcevic's Sharpei dog disappeared from the fenced yard of the residence he shared with his sister, Jeanette M. Barcevic. Jeanette reported the dog's disappearance to the local Humane Society that day. No mention of a reward was made to the Humane Society.

On February 15, 1993, Jeanette received a telephone call from a man who claimed to have the dog. After confirming the breed of the dog, Jeanette asked if she could come get him. The man said no, explaining that the dog was at his friend's home. In addition, he told her that he and Jeanette needed to discuss reward money. At that point, no reward had been offered for the dog. Jeanette asked the man for his name and telephone number, but the caller refused to provide this information. Instead, he said that he would call her again after consulting with his friend. He then hung up.

About twenty-five minutes later, the man called her. He told Jeanette that he could get the dog from his friend and meet her at a 7–Eleven, where he would need $200.00 for the dog. He added that if the money was not forth-coming, the dog would be entered in a dog fight, where it would likely be killed. Jeanette "panicked," agreed to the meeting, and called her brother, Jerry Barcevic. Record, p. 19.

Jerry immediately contacted South Bend Police Officer Chris Jordin. Jerry, Jordin, and Officers Beaty and Suth proceeded to the 7–Eleven. While Jerry stayed in the car, Jordin, wearing plain clothes, went to a grassy knoll by the 7–Eleven, and waited for someone to approach him about the dog. In less than five minutes, Jordin observed a car with a Sharpei in the back seat pull into the parking lot. Swanson was in the passenger

seat of the car. When the car pulled up, Swanson asked Jordin if he was there to pay for the dog, to which Jordin replied, "Yes." When Jordin observed what appeared to be a gun holster on the floor of the car, he drew his weapon and summoned the other officers to the area. Jerry and Jeanette then identified the Sharpei as their dog.

In a statement to Jordin, Swanson stated that he had found the dog three days before the confrontation at the 7–Eleven. The dog had been missing at that time for only two days. He stated further that he had learned of its owner's identity from the Humane Society. Swanson confirmed that in his conversation with Jeanette that she had told him that they had not offered a reward for the dog. He then told Jordin that he had informed Jeanette that "[f]or one hundred bucks you get your dog back to you." Record; p. 35.

Swanson was charged with one count of criminal conversion, a class A misdemeanor. Following a bench trial, Swanson was found guilty of the crime as charged. On April 22, 1994, the trial court imposed and suspended a thirty-day jail sentence, ordered Swanson to serve twenty hours of community service, and to submit not less than five job applications per week to the adult probation office.

Swanson argues that the evidence was insufficient to show that he had the requisite intent to exert unauthorized control over Jerry's dog. We disagree.

■ When we review the evidence supporting a conviction, we may not reweigh the evidence or judge the credibility of the witnesses. *Washington v. State* (1982), Ind., 441 N.E.2d 1355, 1358. Where the evidence is in conflict, we are bound to view only that evidence which is most favorable to the verdict and judgment of the trial court. *Id.* If there is substantial evidence supporting the judgment, we must affirm. *Hutchinson v. State* (1985), Ind., 477 N.E.2d 850, 855.

■ Indiana Code § 35–43–4–3 defines the crime of criminal conversion as:

"A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a Class A misdemeanor."

I.C. § 35–43–4–3. The trier-of-fact may infer the intent of an accused from circumstantial evidence. *Metzler v. State* (1989), Ind., 540 N.E.2d 606, 609.

■ The record shows that Swanson forced Jeanette to provide a reward for the return of the dog. In addition, Swanson admitted, and Jeanette confirmed, that Jeanette had informed him that there was no reward for the dog's return. Swanson threatened to enter the dog in a dog fight if a reward was not forthcoming. In addition, when he arrived at the 7–Eleven, Swanson immediately wanted to know if Jordin was the person who was going to pay him for the dog.

The fact that Swanson insisted on a reward in exchange for the dog, although he knew that no reward had been offered, was sufficient evidence from which the trial court could infer that Swanson intended to exert unauthorized control over the dog until such time as he would be paid a reward.

Accordingly, we affirm the judgment of the trial court.

AFFIRMED.

BAKER and RUCKER, JJ., concur.