Ryan C. CHUPP, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 20A05–0410–CR–578.

Court of Appeals of Indiana.

July 8, 2005.

William J. Cohen, Cohen Law Offices, Elkhart, for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant–Defendant, Ryan C. Chupp, pleaded guilty to one count of Dealing in Marijuana as a Class C felony.[1] Upon appeal, Chupp presents one issue for our review, which we restate as whether the trial court should have applied the doctrine of "sentencing entrapment" when sentencing Chupp.

We affirm.[2]

The record reveals that during an undercover "sting" investigation, a "cooperating source" working with the Goshen Police Department sold eighteen pounds of marijuana to Chupp. As a result, the

---

1. *See* Ind.Code § 35–48–4–10(b)(2) (Burns Code Ed. Repl.2004) (dealing in marijuana elevated to a Class C felony if the amount involved is ten pounds or more of marijuana).

2. Chupp's motion for oral argument is hereby denied.

State charged Chupp on February 2, 2004 as follows:

"on or about the 27th day of January, 2004, at the County of Elkhart and the State of Indiana, one RYAN C. CHUPP, did then and there knowingly finance the delivery of a quantity of marijuana, having an aggregate weight in excess of ten (10) pounds, to wit: approximately eighteen (18) pounds .... " Appendix at 5.

On May 27, 2004, Chupp pleaded guilty to dealing in marijuana as a Class C felony. At a sentencing hearing held on July 1, 2004, Chupp argued that the amount of marijuana involved should not be considered an "aggravating circumstance elevating his crime from a D[f]elony to a C[f]elony, and that [Chupp]'s sentence should be no more than the 3 year maximum sentence under a D[f]elony" because, according to Chupp, the State "created" the Class C felony by selling Chupp more than ten pounds of marijuana. Appellant's Br. at 1. The trial court rejected this argument and imposed an enhanced sentence of six years incarceration.[3] Chupp filed a motion to correct error on September 2, 2004, again requesting that the trial court reduce his sentence. The trial court denied the motion that same day. Chupp then filed a notice of appeal on September 27, 2004.

Upon appeal, Chupp argues that we should adopt the concept of "sentencing entrapment." As explained in *Salama v.*

*State*, 690 N.E.2d 762, 765 (Ind.Ct.App. 1998), *trans. denied,* some federal courts have authorized sentence reduction "where the defendant 'although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment.' " (quoting *United States v. Staufer,* 38 F.3d 1103, 1106 (9th Cir.1994)).[4] In essence, Chupp claims that although he was predisposed to commit dealing in marijuana, the State entrapped him in purchasing an amount of marijuana in excess of ten pounds. Thus, Chupp argues, the trial court should have sentenced him as if he had been convicted of a Class D felony.[5]

The State argues that, by pleading guilty to dealing in marijuana as a Class C felony, Chupp knowingly relinquished any claim that he was entitled to a lesser sentence. Specifically, the State refers to *Lee v. State,* 816 N.E.2d 35, 38 (Ind.2004), wherein the court observed that Indiana courts "have long held that plea agreements are in the nature of contracts entered into between the defendant and the State." Here, the trial court explained at length to Chupp the consequences of his guilty plea. The trial court specifically advised Chupp regarding the possible punishment he would face by explaining to him that he was pleading guilty to a Class C felony and reading the sentencing statute for Class C felonies, Indiana Code § 35–50–2–6. Chupp stated that he understood these advisements and answered

---

**3.** This sentence was ordered to be served consecutively to the sentence imposed upon a prior felony conviction for which Chupp had been on probation, which was revoked as a result of his current guilty plea.

**4.** The *Staufer* court was in turn quoting *United States v. Stuart,* 923 F.2d 607, 614 (8th Cir.1991), *cert. denied,* 499 U.S. 967, 111 S.Ct. 1599, 113 L.Ed.2d 662.

**5.** At the sentencing hearing, Chupp's counsel argued that the trial court should sentence Chupp to three years—the maximum sentence for a Class D felony. *See* Ind.Code § 35–50–2–7 (Burns Code Ed. Repl.2004). A three-year sentence would also be within the statutory sentencing range for Class C felonies. *See* Ind.Code § 35–50–2–6(a) (Burns Code Ed. Repl.2004). The minimum sentence for a Class C felony is two years. The maximum is eight years.

in the affirmative when asked if he "committed the offense as alleged in the charge filed against [him] in this court." Tr. at 11.

To accept Chupp's argument would be to allow him to escape the known consequences of a voluntary "Alford plea."[6] There is abundant case authority in Indiana precluding acceptance of a guilty plea when at the same time the defendant asserts his innocence. *See Carter v. State,* 739 N.E.2d 126 (Ind.2000); *Ross v. State,* 456 N.E.2d 420 (Ind.1983). Nevertheless, our courts have acknowledged that a defendant might legitimately wish to admit guilt to a lesser offense in order to avoid going to trial on the greater charge risking conviction and a much more severe penalty. In *Trueblood v. State,* 587 N.E.2d 105, 108 (Ind.1992), *cert denied* 506 U.S. 897, 113 S.Ct. 278, 121 L.Ed.2d 205, Chief Justice Shepard, speaking for our Supreme Court, noted that defendants should have the option "to plead guilty if they so choose. They may want to do so for a multitude of reasons that may be favorable to them."

Be that as it may, Chupp would have us hold that a defendant may knowingly, voluntarily, and intelligently admit guilt to a higher class of felony, yet somehow be entitled to be sentenced as if he had committed a lesser class of felony. In other words, although Chupp knowingly, voluntarily, and intelligently admitted to dealing in over ten pounds of marijuana, he now argues that he should be sentenced as if the amount involved were not more than ten pounds. We reject such reasoning. If

Chupp believed that the State somehow manipulated the circumstances surrounding his conviction, he had the choice to either be bound by a knowing and voluntary plea or to challenge the police conduct at a trial.[7]

■ Upon appeal, Chupp acknowledges the contractual nature of the plea agreement but claims that due process principles supercede any contractual obligations. Chupp refers to *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), for the proposition that there may be some occasions when police involvement in criminal activity could reach such proportions as to bar conviction of even a predisposed defendant. While Justice Powell's concurring opinion does support such concept, *see id.* at 493–94, 96 S.Ct. 1646, the leading plurality opinion in *Hampton* undercuts Chupp's position by holding that the defendant's conceded predisposition rendered the defense of entrapment unavailable to him. *See id.* at 489–90, 96 S.Ct. 1646. Chupp also refers to *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), wherein the Court overturned the defendant's conviction which was supported by evidence resulting from police conduct involving illegally breaking into the defendant's room, struggling to force open his mouth, removing what was there, and forcibly extracting his stomach contents. We note that neither *Hampton* nor *Rochin* involved the terms of plea agreements. In any event, we acknowledge that due process concerns might, under some

---

**6.** In *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the United States Supreme Court held that there is no federal constitutional barrier to acceptance of a guilty plea despite an assertion of innocence, at least when there is a factual basis for the plea. The Court, however, recognized the right of individual states to refuse to ac-

cept such pleas. *See Carter v. State,* 739 N.E.2d 126, 129 (Ind.2000).

**7.** In this regard it is worthy of note that Chupp pleaded guilty to the very crime as charged. Had he gone to trial, he would have run no risk for a conviction of any crime higher than a Class C felony.

circumstances, allow a defendant to challenge the terms of his plea agreement. *Cf. Lee*, 816 N.E.2d at 38 ("[b]ecause important due process rights are involved, contract law principles although helpful are not necessarily determinative in cases involving plea agreements"). Nevertheless, accepting Chupp's version of the events as true, the police conduct here did not reach the levels of over-involvement referred to by Justice Powell in *Hampton* or the "outrageous" conduct involved in *Rochin.*

Chupp also cites *United States v. Garcia*, 79 F.3d 74 (7th Cir.1996), *cert. denied* 519 U.S. 858, 117 S.Ct. 158, 136 L.Ed.2d 102, claiming that due process bars the government from invoking judicial process to obtain a conviction where the State causes a defendant initially predisposed to commit a lesser crime to commit a more serious crime. However, *Garcia* does not support Chupp's contentions. In that case, the Seventh Circuit Court of Appeals rejected the defendant's claim of sentencing entrapment, or as it referred to the concept, "sentencing manipulation," by holding that "there is no defense of sentencing manipulation in this circuit." *Id.* at 76. More importantly, the court rejected the defendant's claim that his constitutional rights were violated, stating, "A suspect has no constitutional right to be arrested when the police have probable cause." *Id. Garcia* simply does not support Chupp's argument.

Chupp also refers to *Lee, supra,* wherein the defendant claimed that the sentence he received pursuant to his guilty plea was illegal, and his guilty plea was therefore void. 816 N.E.2d at 36. *Lee,* however,

was challenging the validity of the plea itself, not just the sentence he received.[8] *Id.* Because this is an appeal from a guilty plea, Chupp may not now challenge the validity of his plea. *See Tumulty v. State,* 666 N.E.2d 394, 395 (Ind.1996).

■ We therefore view Chupp's challenge as one to the sentencing discretion of the trial court, i.e. that the trial court should have exercised its discretion and imposed a sentence that, although still authorized for a Class C felony, was also within the statutory range of sentencing for a Class D felony. The trial court found three mitigators: that Chupp was young—twenty seven years old, that Chupp was addicted to drugs, and that Chupp accepted responsibility for his criminal activities. The trial court also found several aggravators: that Chupp was on probation when he committed the instant offense, that Chupp had a criminal record consisting of two misdemeanors and one prior felony conviction, that Chupp had failed to appear for court hearings in the past, that Chupp's past behavior indicated a disregard for the law, and that prior leniency had been unsuccessful in deterring Chupp's criminal behavior. The trial court also found as an aggravating circumstance that Chupp, although in arrears for child support, had $11,200 in cash when arrested.[9] Based on its balancing of these aggravators and mitigators, the trial court enhanced Chupp's sentence by two years, for a sentence of six years on the C felony conviction. *See* I.C. § 35–50–2–6(a).

Although Chupp made no argument in his appellant's brief or his reply brief that

---

8. Indeed, defendant Lee had already served his sentence for the challenged conviction. *Id.* at 40 n. 2. More importantly, the *Lee* court held that the illegality of the sentence called for by the plea agreement was an insufficient reason to set aside Lee's conviction. *Id.* at 39–40.

9. The trial court specifically did not consider the amount of marijuana involved as an aggravating factor in imposing sentence upon the Class C felony conviction.

the trial court violated the rule set forth in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied,* Chupp submitted to this court on March 17, 2005, a citation to additional authority in which he cites *Smylie v. State,* 823 N.E.2d 679 (Ind.2005), a case which addressed the impact of the *Blakely* holding in Indiana. Chupp claims that *Smylie* "is a pertinent and significant authority that directly affects [his] sentence and bolsters [his] argument outlined on pages 3–7 in [his] brief." To the extent that Chupp claims that *Smylie* supports his claim regarding sentencing entrapment, we are unpersuaded. The *Smylie* case is inapposite, and Chupp provides no argument as to how *Smylie* supports his entrapment claim.

■■■ However, Chupp also claims that the holding in *Smylie* "directly affects [his] sentence." We view this as a claim that the trial court violated the *Blakely* rule as applied in *Smylie.* In *Blakely,* the United States Supreme Court expounded upon the rule from the earlier case of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), wherein the Court had held that other than the fact of a prior conviction, any fact which increases the penalty for a crime beyond the prescribed "statutory maximum" must be submitted to a jury and proved beyond a reasonable doubt. *Blakely,* 124 S.Ct. at 2536; *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348. For our purposes, the crucial portion of *Blakely* is that in which the Court explained what constituted the "statutory maximum" sentence for purposes of the *Apprendi* rule. The *Blakely* Court stated that the relevant "statutory maximum" is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" 124 S.Ct. at 2537 (emphasis in original). Thus, for *Apprendi* pur-

poses, the "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. *Id.* If a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority. *Id.* When a defendant enters a guilty plea, the State is free to seek judicial enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial fact finding. *Id.* at 2541.

In *Smylie,* our Supreme Court held that *Blakely* applies to Indiana's sentencing scheme and that "the sort of facts envisioned by *Blakely* as necessitating a jury finding must be found by a jury under Indiana's existing sentencing laws." *Id.* at 686. Though the *Blakely* rule is applicable, so too is the exception to the rule, i.e. a judge may enhance a sentence based upon the fact of a prior conviction without that fact being re-submitted to a jury. *See Blakely,* 124 S.Ct. at 2536; *Smylie,* 823 N.E.2d at 682; *Hill v. State,* 825 N.E.2d 432, 438 (Ind.Ct.App.2005).

The *Smylie* court also explained under what circumstances a *Blakely* claim may be brought. Despite language in the *Blakely* opinion which seemed to indicate that the court was simply applying the rule of prior precedent, *see* 124 S.Ct. at 2537, the *Smylie* court held that the *Blakely* rule was a "new rule" for purposes of retroactivity. *Smylie,* 823 N.E.2d at 687. The *Smylie* court concluded:

"First, as a new rule of constitutional procedure, we will apply *Blakely* retroactively to all cases on direct review at the time *Blakely* was announced. Second, a defendant need not have objected at trial in order to raise a *Blakely* claim on appeal inasmuch as not raising a

*Blakely* claim before its issuance would fall within the range of effective lawyering. Third, those defendants who did not appeal their sentence at all will have forfeited any *Blakely* claim." *Id.* at 690–91.

█ In the present case, Chupp's appeal was not pending upon direct review when *Blakely* was handed down. The *Blakely* opinion was issued on June 24, 2004; Chupp was sentenced one week later, on July 1, 2004. Thus, Chupp could have raised a *Blakely*-based objection to the trial court's use of facts not found by a jury beyond a reasonable doubt. This court has previously noted that " 'good appellate advocacy demands the regular reading of the Advance Sheets.' " *Minor v. State*, 792 N.E.2d 59, 63 (Ind.Ct.App.2003) (quoting *Boss–Harrison Hotel Co. v. Barnard*, 148 Ind.App. 406, 408, 266 N.E.2d 810, 811 (1971)), *trans. denied.* Nevertheless, we recognize that with such a short time between the *Blakely* opinion and Chupp's sentencing hearing, the impact of *Blakely* on Indiana's sentencing scheme might not have been fully realized.[10] Certainly no Indiana appellate court had yet held that *Blakely* affected our sentencing scheme.[11] Given the short amount of time between the *Blakely* decision and the sentencing hearing, we are not willing to say that Chupp forfeited any *Blakely* claim for failure to object at the sentencing hearing. *Cf. Clark v. State*, 829 N.E.2d 589 (Ind. Ct.App., 2005) (holding that defendant who was sentenced two months after *Blakely* was handed down forfeited *Blakely* claim when he never objected to his sentence at the sentencing hearing).

█ That being said, we do note that Chupp filed his appellant's brief on January 20, 2005 and his reply brief on March 3, 2005. Although these dates were before the *Smylie* decision, several opinions from this court had by that time already assessed the impact of *Blakely*. *See e.g., Milligan v. State*, 819 N.E.2d 115, 118 (Ind.Ct.App.2004) (handed down December 14, 2004); *Trusley v. State*, 818 N.E.2d 110, 112 (Ind.Ct.App.2004) (handed down November 24, 2004), *trans. granted; Strong v. State*, 817 N.E.2d 256, 262–63 (Ind.Ct.App.2004) (handed down November 5, 2004), *clarified upon reh'g*, 820 N.E.2d 688 (2005); *Krebs v. State*, 816 N.E.2d 469, 476 (Ind.Ct.App.2004) (handed down on October 20, 2004); *Holden v. State*, 815 N.E.2d 1049, 1060 (Ind.Ct.App. 2004) (handed down on October 13, 2004); *Carson v. State*, 813 N.E.2d 1187, 1189 (Ind.Ct.App.2004) (handed down on August 20, 2004).

█ We fail to see what prevented Chupp from advancing a *Blakely* argument in his appellant's brief. To be sure, Indiana Appellate Rule 48 provides for the citation to additional authorities:

"When pertinent and significant authorities come to the attention of a party after the party's brief or Petition has been filed, or after oral argument but before decision, a party may promptly file with the Clerk a notice of those authorities setting forth the citations.

---

**10.** Indeed, the advance sheet containing the *Blakely* opinion might well not have even been issued at the time of Chupp's sentencing hearing. The advance sheets for West's Supreme Court Reporter appear to be published bi-monthly. With the recent advances in communications technology, diligent appellate advocates perhaps should regularly read opinions online. Both this court and our Supreme Court provide free access to our published opinions online at http://www.in.gov/judiciary/opinions/. The Supreme Court of the United States similarly offers free access to its opinions at http://www.supremecourtus.gov/opinions/opinions.html.

**11.** The first published opinion from this court addressing a *Blakely* issue was *Carson v. State*, 813 N.E.2d 1187 (Ind.Ct.App.2004), handed down on August 20, 2004.

There shall be a reference either to the page of the brief or to a point argued orally to which the citations pertain, with a parenthetical or a single sentence explaining the authority."

We do not take this rule to mean, however, that a party may present an argument that was available but not presented in his appellant's brief simply by filing a citation to additional authority. An issue not raised in an appellant's brief may not be raised for the first time in a reply brief. *James v. State*, 716 N.E.2d 935, 940 n. 5 (Ind. 1999). Surely it is not the intention of Appellate Rule 48 to allow a party who failed to present an issue in his appellant's brief to bypass the general rule that unraised issues may not be presented for the first time in a reply brief by filing a citation to additional authority. Instead, as we read the Rule, where a party has properly presented an issue, he may supplement his brief by providing citations to additional authority to support the argument previously raised. *Cf. Washington v. State*, 441 N.E.2d 1355, 1359 n. 1 (Ind. 1982) (citing former Appellate Rule 8.4, governing citations to additional authority, in denying State's motion to strike defendant's "supplemental brief" which cited new authority to support argument previously presented in appellant's brief).

Here, although such was available, Chupp failed to make any argument in his appellant's brief that the trial court violated *Blakely* in imposing sentence. Therefore, to the extent that his citation to additional authority is an attempt to make such a claim now, such claim has been forfeited.[12] Further, the aggravating factors relied upon by the trial court adequately support the two-year enhancement of Chupp's sentence. In summary, the trial court did not abuse its discretion in sentencing Chupp.

The judgment of the trial court is affirmed.

NAJAM, J., and RILEY, J., concur.

---

12. Even if we were to consider any *Blakely* claim, Chupp would not prevail. First, per *Apprendi* and *Blakely*, the trial court could properly rely upon Chupp's prior convictions in enhancing his sentence. With regard to the remaining aggravating factors relied upon by the trial court, several were based upon information found in the presentence investigation report. The report details the fact that Chupp had prior convictions, that Chupp had a bench warrant issued for failure to appear, that Chupp was on probation at the time of the instant offense, and that Chupp, although in arrears on his child support obligation, had $11,200 on his person when arrested. The trial court twice asked if Chupp's counsel had had an opportunity to review the presentence investigation report and if there were any "corrections." Tr. at 22, 25. Chupp's counsel objected only to the calculation of jail-time credit. Further, Chupp agreed with the trial court that it was a "problem" that he had committed the instant offense while on probation. Tr. at 37. Chupp's failure to object or make any factual challenge to the presentence investigation report is tantamount to an admission to the accuracy of the facts contained therein. *See Caron v. State*, 824 N.E.2d 745, 755 (Ind.Ct.App.2005) (no *Blakely* violation where defense counsel explained that probation violation resulted from arrest on instant crime, presentence report revealed defendant was on probation at time of instant offense, and defendant acknowledged accuracy of report). Therefore, in considering the aggravating factors, the trial court could properly rely upon the fact that Chupp had prior convictions and the facts contained in the presentence investigation report, which Chupp effectively admitted were accurate, because such aggravators do not implicate *Blakely*. *See Blakely*, 124 S.Ct. at 2536–37. Even where a trial court improperly relied upon certain aggravators, a sentence enhancement may be upheld if other valid aggravators exist. *Caron*, 824 N.E.2d at 756. Even a single valid aggravating circumstance may be adequate to justify a sentence enhancement. *Id.*