**Harold E. BOWMAN, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 4–783A238.

Court of Appeals of Indiana,
Fourth District.

Oct. 3, 1984.

Larry D. Combs, Clarke House, Franklin, for appellant.

Linley E. Pearson, Atty. Gen., Kathleen Ransom Radford, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Presiding Judge.

Harold E. Bowman comes before us convicted by a jury of both theft, a Class D felony (IND.CODE 35–43–4–2), and possession of a controlled substance (diazepam), a Class D felony (IND.CODE 35–48–4–7) (amended 1983 Ind.Acts, P.L. 138, § 4), for which he was sentenced to two consecutive two-year terms. He challenges the court's failure to sustain his objections to testimony and evidence at trial and the sufficiency of the evidence underlying the jury's verdict on the theft count. After a review of the record and of pertinent Indiana law, we find no error in Bowman's conviction and affirm.

### ISSUES

1. Did the trial court err in overruling Bowman's objections to testimony regarding his custodial statements because they were elicited in derogation of his *Miranda* rights?

2. Did the trial court err in allowing into evidence, over Bowman's objections, testimony and an exhibit of pills taken from his person pursuant to a search made after his arrest?

3. Is the jury verdict for theft contrary to law as being supported by insufficient evidence?

### FACTS

Around 12:30 P.M., November 21, 1982, Randy Terkhorn, a hardware salesperson in the Sears store in Greenwood, observed Bowman and a companion, Robert Skow, in his department, examining circular saws and routers. He approached the two men to ask if they needed assistance and noted that Bowman had a packaged Sears Craftsman circular saw in his hands. Terkhorn conversed with them briefly about saws and tools then they left the department. He noted Bowman did not stop at a nearby cashier's booth to pay for the saw and, knowing Sears would not have given them permission to take the saw without paying, paged for store security when he also failed to stop at the next booth in the menswear department.

Police officer William McCarty, the security officer alerted by Terkhorn, espied Bowman and Skow walking briskly toward an exit. Skow was now carrying the saw, and Bowman assisted him through the doors. McCarty trotted to catch up with them and managed to halt them outside. He asked the men if they had proof for their purchase of the saw. Ordinarily, Sears's policy is to tape the receipt to the outside of large items such as the saw; however, Bowman handed him a receipt. When McCarty noticed the receipt was dated for November 20, the day before, he informed the men it was the wrong receipt. Both men then claimed they thought the other had paid for it, Bowman particularly insisting he had been in the catalog department and had not realized they had come outside. Skow then declared they were actually returning the saw.

McCarty led Bowman and Skow back to the Customer Service office where Terkhorn identified them as the men he had served in the hardware department. McCarty read them their *Miranda* rights, and evidently at some point, Bowman actually signed a waiver of rights form. The two men continued to offer various explanations for either why the saw had not been paid for or why they did not have a receipt. At one point, they claimed the receipt was in their truck, but a search of the vehicle never turned up any receipt registering the correct amount. Two Greenwood police officers arrived at the office and arrested both men. One officer conducted a search of the two arrestees

and found a bag of pills in Bowman's jacket. Laboratory testing disclosed the pills were diazepam, a schedule IV controlled substance. Bowman was charged and convicted of both theft and possession of a controlled substance. He now appeals.

## DECISION

### Bowman's Custodial Statements

Bowman presents us with a rather confusing argument pertaining to testimony about inculpatory statements, allegedly made to one he designates as the arresting officer, while he was in custody. Bowman has not clearly differentiated between which statements he finds objectionable, nor can any of them really be characterized as anything but exculpatory. We are also uncertain whether Bowman's statements were the result of interrogation. However, we must address the entire issue to clarify our decision that testimony of all his statements was properly admitted into evidence.

McCarty's authority to stop Bowman and his companion was obtained under IND. CODE 35-33-6-2, which states:

"(a) An owner or agent of a store who has probable cause to believe that a theft has occurred or is occurring on or about the store and who has probable cause to believe that a specific person has committed or is committing the theft may:

(1) detain the person and request the person to identify himself;

(2) verify the identification;

(3) determine whether the person has in his possession unpurchased merchandise taken from the store;

(4) inform the appropriate law enforcement officers; and

(5) inform the parents or others interested in the person's welfare, that the person has been detained.

(b) The detention must:

(1) be reasonable and last only for a reasonable time; and

(2) not extend beyond the arrival of a law enforcement officer or two (2) hours, whichever first occurs."

This statute encompasses all impediment by store personnel to suspected thievery and, for purposes of Bowman's case, covers both McCarty's investigatory stop outside the store and his subsequent detention of Bowman within the premises. Bowman, however, contends McCarty had no probable cause to stop him. In this, we believe Bowman is incorrect.

Probable cause to briefly stop an individual suspected of engaging in criminal conduct need not rise to the probable cause required to make an arrest. *Adams v. Williams,* (1972) 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612; *Luckett v. State,* (1972) 259 Ind. 174, 284 N.E.2d 738. Rather, an officer may stop a suspicious individual "to determine his identity or to maintain the status quo momentarily while obtaining more information," if the officer reasonably believes such interference is warranted by the facts known at the time. *Adams v. Williams,* 407 U.S. at 146, 92 S.Ct. at 1923; *Terry v. Ohio,* (1968) 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. We are aware the statute here does not contemplate action by police officers, only store owners or agents thereof. However, we believe the situation to be sufficiently similar that no purpose would be served by creating a distinction and hold that the requirements of a police officer must be met in this statute, at least with respect to investigatory stops.

McCarty had been informed by a store employee that Bowman and his companion may not have paid for a circular saw taken from his department. When McCarty observed them, the men were walking so quickly with the saw that he had to jog to catch up with them. This is sufficient probable cause to support the investigative stop.

McCarty was not only justified in stopping them by Terkhorn's information and their suspicious behavior but was fully authorized by law to determine whether the saw had indeed been purchased. *See Taylor v. State,* (1980) 273 Ind. 558, 406 N.E.2d 247 (stopping automobile for purpose of investigating traffic violations and

other suspicious behavior). McCarty properly questioned the men, and Bowman's statements in response were properly admitted at trial.

After the initial stop, Bowman and Skow were taken to the store's customer service office for detention until Greenwood police officers could take them into their custody. At this time, McCarty read them their *Miranda* rights (which both indicated they understood), but they continued to try to explain their actions. Bowman also signed a waiver of rights form after the Greenwood police arrived. Bowman's chief contention with respect to his custodial statements is that they are inadmissible because the written waiver was not put in evidence.

He contends the best-evidence rule applies to such a case, and without the written waiver, statements gathered thereby are inadmissible. Bowman has failed to cite any authority for this unusual proposition; the issue is waived. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7); *Morris v. State,* (1982) Ind.App., 433 N.E.2d 74. Regardless, the evidence was properly admitted.

▬ It is clear that probable cause to further detain Bowman and Skow increased upon information revealed by McCarty's investigatory stop—the pair had no receipt for the saw and related various and conflicting versions of why it was in their possession and who should have paid for it. The statute cited above, IC 35–33–6–2, clearly authorizes such detention without designating it as an arrest. Technically, persons detained thereby could be considered in "custody," under the reasonable belief they were not free to leave. *See, e.g., Dunaway v. State,* (1982) Ind., 440

N.E.2d 682. But the short duration allowed for such "custody" and the authority given civilians under the statute indicates official custody was neither contemplated nor authorized by the legislature. On the other hand, the case of *Miranda v. Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, applies to a *custodial* interrogation, "questioning initiated by *law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444, 86 S.Ct. at 1612. (Emphasis added.) Such did not occur here. Thus, we do not believe *Miranda* rights needed to even have been given because McCarty was not acting within his law enforcement capacity while governed by IC 35–33–6–2. His actual profession as a police officer and his training in such situations prompted his recitation, not necessarily the "custody" of the suspects. He merely provided extra protection for Bowman and Skow's rights until they were asked to sign the waiver forms in the presence of the arresting Greenwood officers. We see no error in admitting the statements made to McCarty while detained in the store's office. Bowman was not in "custody" as contemplated by *Miranda.*[1] *See also Adams v. State,* (1979) 270 Ind. 406, 386 N.E.2d 657.

■■ The third, and last, crucial period during which Bowman could have made statements was after his actual arrest by Greenwood police officers. Mindful that what was accomplished here was a warrantless arrest, we have determined that "the facts and circumstances within the knowledge of the officer at the time of the arrest would warrant a person of reason-

---

1. Our research indicates that even if a police officer were acting within his geographical jurisdiction as a private security guard, *Miranda* rights need not be given as they were here. Indiana law is clear on the point that *"Miranda* warnings need not precede statements made by a defendant to a private citizen." *Adams v. State,* (1979) 270 Ind. 406, 410, 386 N.E.2d 657, 661. Thus, security officers, as private citizens, are not required to issue the warnings. The rationale supporting such principle is to the effect that where no state action is involved, the

*Miranda* rights are inapplicable. *Metigoruk v. Municipality of Anchorage,* (1982) Alaska App., 655 P.2d 1317; *State v. McDaniel,* (1975) 44 Ohio App.2d 163, 337 N.E.2d 173. And, when police officers are acting in the capacity of private security guards, they shed their cloak of State agency and become agents of the private hiring authority, thereby requiring no more of them with regard to a defendant's constitutional rights than of any other citizen. *See State v. McDaniel, supra; Gathers v. Harris Teeter Supermarket, Inc.,* (1984) S.C.App., 317 S.E.2d 748.

able caution to believe the arrestee has committed or is committing a felony." *Haller v. State*, (1983) Ind.App., 454 N.E.2d 76, 79. The information gleaned from the investigatory stop and relayed to police officers was sufficient probable cause to justify Bowman's warrantless arrest. He thereafter signed a waiver of his rights. He does not allege his waiver was not knowingly, intelligently and voluntarily made, *see Washington v. State*, (1982) Ind., 441 N.E.2d 1355, and his warrantless arrest was lawful. We see no error in the admission of Bowman's statements during this period, either.

### Search

Bowman next alleges error in the admission of testimony about an exhibit gathered from a search of his person by the police. He asserts that because his arrest was unlawful so was the search, and thus, evidence garnered thereby is inadmissible. Again, we find no error.

 We have already established Bowman was lawfully arrested. The police's subsequent search was also lawful because a search limited to an arrestee's body is an exception to the warrant requirements of the Fourth Amendment when the arrest itself is lawful. *Klopfenstein v. State*, (1982) Ind.App., 439 N.E.2d 1181; *Haller v. State, supra*, 454 N.E.2d 76. The trial court did not err in admitting testimony regarding the search nor the fruits thereof, the diazepam.

### Sufficiency of the Evidence

 Bowman lastly promotes the argument there was insufficient evidence to support the jury's verdict that he committed the offense of theft. When faced with such a charge, we are limited in our review of the record. We can only review those facts most favorable to the verdict and may neither reweigh the evidence nor reassess the credibility of the witnesses before the panel. If the State's evidence and reasonable inferences therefrom support the conclusion Bowman is guilty beyond a reasonable doubt, we cannot disturb the jury's decision. *Gatewood v. State*, (1982) Ind., 430 N.E.2d 781. The facts, as we have already recited them, clearly support the jury's finding of guilt.

 The pertinent theft statute is IC 35–43–4–2(a):

"A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony."

The facts most favorable to the verdict indicate that Bowman and Skow acted in concert in leaving a Sears store without paying for Sears property, a circular saw, and without permission to do so. The elements of theft were clearly established. *See* IC 35–43–4–2(a); *Nelson v. State*, (1975) 167 Ind.App. 59, 337 N.E.2d 877. And an accomplice to an offense can be tried and convicted as a principal. IND. CODE 35–41–2–4; *Harris v. State*, (1981) Ind., 425 N.E.2d 154 (attempted murder). The record of the trial shows Bowman was clearly an active participant in the theft of the saw, Skow's conflicting evidence notwithstanding. We find no error in the jury's decision to disbelieve Skow and uphold its verdict.

Affirmed.

CONOVER and GARRARD (sitting by designation), JJ., concur.