# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-1107

AHMMAD POURGHORAISHI,

*Plaintiff-Appellant,*

*v.*

FLYING J, INCORPORATED, STEVE LINDGREN,
LARRY WILLIAMS, CITY OF GARY, INDIANA,
NAKON SECURITY, INCORPORATED,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2: 03-CV-269—**Rudy Lozano,** *Judge.*

ARGUED SEPTEMBER 8, 2005—DECIDED APRIL 20, 2006

Before FLAUM, *Chief Judge*, and EASTERBROOK and
ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Following his arrest for disorderly conduct and trespass, Ahmmad Pourghoraishi, a truck driver of Middle Eastern descent accused of trying to leave a gas station without paying for fuel, sued the gas station, its manager, the off-duty police officer employed as a security guard, the security company, and the City of Gary, Indiana, for intentional discrimination in a place of public accommodation (pursuant to 42 U.S.C. § 2000a), for interfering with his right to make and enforce a contract (42 U.S.C. § 1981), for violating his Fourth and Fourteenth

Amendment rights by arresting him without a warrant or probable cause (42 U.S.C. § 1983), and for various injuries addressed by Indiana state tort law. The district court dismissed the public accommodation claims as moot and untimely, granted summary judgment on the § 1981 and § 1983 claims, and dismissed the state law claims. Pourghoraishi appealed all but the public accommodations claims. On appeal of the remaining claims, we affirm in part and reverse in part.

## I.

The facts as presented by the parties lay before us in a tangled web. As we have noted before, summary judgment briefs that present multiple versions of the facts arouse our attention at the outset because under the Federal Rules of Civil Procedure, a judge may grant summary judgment for a moving party only where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Because our only task upon review of a summary judgment motion is to determine "whether there is any material dispute of fact that requires a trial," (*Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)), multiple versions of the facts increase the chances that at least one of those conflicting facts will be material to the outcome of the case. With this in mind, we review the facts stated in the light most favorable to Pourghoraishi, (Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986), *F.T.C. v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 634 (7th Cir. 2005)), noting where appropriate conflicting facts presented by the defendants.[1]

---

[1] The parties have made this court's task of reviewing the facts exceptionally difficult by referring to deposition pages rather than

(continued...)

Mr. Pourghoraishi, a truck driver and native of Iran, drove into a Flying J truck stop in Gary, Indiana, on the morning of November 28, 2001, to pump fuel into his truck. As was his usual practice, Pourghoraishi pulled up to an open pump, called the fuel desk for authorization to pump fuel, provided the requested information, and began pumping gas. When he finished, he went inside to pay for the fuel and use the restroom. After standing in line for some time, he decided to leave the line and go to the bathroom before paying. According to Pourghoraishi, two white truckers also left the cashier line to go to the restroom. On his way to the restroom, Steve Lindgren, the manager of Flying J, approached Pourghoraishi and, according to Pourghoraishi's account, told him, in a hostile tone, that he had to leave the facility and could not use the bathroom. According to the defendants, Lindgren believed that Pourghoraishi had provided false information during his call to the fuel desk, although he testified at his deposition that he could not recall what false information he believed Pourghoraishi had provided. Although we

---

[1] (...continued)
citations to the record, and then failing to include the depositions in their entirety anywhere in the record—thus forcing us to search through the entire record for the particular deposition page scattered throughout the pleadings. The Federal Rules of Appellate Procedure require that, "[n]o fact shall be stated in the statement of facts unless it is supported by a reference to the page or pages of the record or appendix where the fact appears." Fed. R. App. P. 28(a)(7). *See also* Fed. R. App. P. 28(e); Circuit Rule 28(c); *Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990, 1001 (7th Cir. 2004) (where the plaintiff has failed to cite the record, "we will not root through the hundreds of documents and thousands of pages that make up the record here to make his case for him."); *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in" the record.)

must take the facts in the light most favorable to Pourghoraishi, we can accept Lindgren's explanation for his initial interaction with Pourghoraishi. Pourghoraishi does not deny that Lindgren *thought* the former had provided false information (how could he?), rather, he denies only that he *did* provide false information. Lindgren's explanation merely provides a background explanation as to why the manager approached Pourghoraishi in the first instance. Pourghoraishi does not allege that anyone knew his race or singled him out prior to the time he entered the Flying J to pay for his fuel. In fact, Pourghoraishi claims that prior to his encounter with Lindgren on the way to the restroom, Pourghoraishi had never spoken to the Flying J manager before.

Once confronted by Lindgren, Pourghoraishi claims that he told the manager that he could not leave the facility because he still had to pay for the gasoline he pumped into his truck. Pourghoraishi alleges that, while Lindgren approached him "aggressively" with a raised voice, he responded non-offensively without raising his voice or using profanity.

During Pourghoraishi's and Lindgren's exchange, Officer Larry Williams, an auxiliary City of Gary, Indiana, police officer, approached the two disputing men. Williams was at the Flying J that day as an employee of Nakon Security, Inc., the security company hired by the Flying J. Williams told Pourghoraishi to leave the Flying J and again Pourghoraishi responded that he had to pay his bill and use the restroom. According to Pourghoraishi, Williams called Pourghoraishi a "motherfucker," handcuffed him, placed him under arrest, and told him that he was going to send him "back to his country." But for a brief interaction regarding payment and some questions regarding the information Pourghoraishi had provided to the fuel desk, Pourghoraishi's interaction with Lindgren primarily ended when Officer Williams arrived on the scene.

Williams escorted Pourghoraishi to a manager's office where he was detained for a couple of hours and questioned primarily by Williams. During this time, Pourghoraishi claims that Williams took his truck key and searched his vehicle returning with a registration form. He also claims that, while he was handcuffed and without his consent, Williams removed $160.00 from Pourghoraishi's pocket which he gave to Lindgren who then took the money to a cashier and returned with a receipt. Officer Williams prepared an offense report and an arrest report on Gary Police Department forms. At some point he also prepared a probable cause affidavit, signed by Lindgren, for each of the two misdemeanor charges—disorderly conduct and criminal trespass. These documents indicate that Pourghoraishi was not born in the United States and state that his race is "Persian."

Eventually a transporting officer from the Gary Police Department arrived to take Pourghoraishi to the Gary City Jail. He was released after posting bond. While at the bond office, Pourghoraishi noticed Williams on the sidewalk and approached him to ask about his truck and key. Williams stated that he did not know the location of the truck or key, but agreed to drive Pourghoraishi back to the Flying J. Pourghoraishi claims that during this trip, he asked Williams why he had arrested him for trespass and Williams indicated that he had done so under Lindgren's direction.[2]

Later Pourghoraishi negotiated a "deferred prosecution" agreement with the local prosecutor whereby the criminal charges against him were dismissed after six months.

---

[2] The defendants object to Pourghoraishi's use of this testimony as hearsay, and both parties briefed this evidentiary question in the district court. For reasons described further, *infra*, we need not resolve this issue.

Before the district court, Pourghoraishi claimed that the Flying J, Lindgren, and Nakon Security had intentionally discriminated against him on the basis of his race and national origin in a place of public accommodation in violation of 42 U.S.C. § 2000a and had interfered with his right to make and enforce contracts on the basis of his race in violation of 42 U.S.C. § 1981. He charged the City of Gary and Officer Williams, in his official capacity as a City of Gary police officer, for violations of 42 U.S.C. § 1983 for allegedly arresting Pourghoraishi without probable cause in violation of his Fourth and Fourteenth Amendment Rights. Pourghoraishi lodged pendant state law claims against all five defendants for false arrest, false imprisonment, intentional infliction of emotional distress, and tortious interference with a business relationship. In the face of a motion for summary judgment filed by the Flying J, Lindgren, and Nakon Security, the district court dismissed Pourghoraishi's public accommodation claims for lack of jurisdiction after he failed to meet the procedural prerequisites of 42 U.S.C. § 2000a, and granted summary judgment on the § 1981 claims. The district court granted summary judgment for Officer Williams and the City of Gary on the § 1983 claims, and dismissed all of the pendant state law claims. Pourghoraishi appeals to this court to reverse the grant of summary judgment on the §§ 1981 and 1983 claims as well as the district court's dismissal of the state law claims. Pursuant to this request, we review his claims de novo. *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005).

## II.

*A. Section 1981 claims.*

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts,

as is enjoyed by white citizens. . . ." and defines making and enforcing of contracts as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981. More commonly litigants invoke § 1981 to assert their rights to be free from discrimination while making and enforcing employment contracts, but this court and others have evaluated § 1981 claims made by plaintiffs who allege that they faced illegal discrimination in retail establishments. *See Morris v. Office Max, Inc.*, 89 F.3d 411 (7th Cir. 1996). To establish a prima facie claim of such discrimination, Pourghoraishi must show that (1) he is a member of a racial minority; (2) the defendants had the intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract. *Id.* at 413.

The first prong, although generally clear in most cases, is less so here. Section 1981 applies to allegations of discrimination based on race but not national origin. *Von Zuckerstein v. Argonne Nat'l Lab.*, 984 F.2d 1467, 1472 (7th Cir. 1993); *Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 352 (7th Cir. 1987). As Justice Brennan pointed out in his concurrence in *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 614 (1987), however, "the line between discrimination based on ancestry or ethnic characteristics, and discrimination based on place or nation of . . . origin is not a bright one." *Id.* at 614 (internal citations omitted) (ellipses in original). In any event, the majority of the Supreme Court has resolved much of this issue by defining race broadly to include identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. *Saint Francis Coll.*, 481 U.S. at 609. When evaluating those identifiable classes, the Supreme Court has noted that it will look to see whether, at the time Congress passed § 1981, it intended to protect the specific group at issue. *Shaare Tefila Congrega-*

*tion v. Cobb*, 481 U.S. 615, 617-18 (1987). As the Supreme Court's extensive historical research in *Saint Francis* made clear, many groups whom we would now label "white"—Germans, Greeks, Swedes, Hungarians, Finns etc.—were, at the time Congress adopted § 1981, considered distinct races. *Saint Francis Coll.*, 481 U.S. at 611-12. Based on this analysis, the Court concluded that "Arabs were among the peoples then considered to be distinct races and hence within the protection of the statute." *Shaare Tefila Congregation*, 481 U.S. at 617. Pourghoraishi complicated the analysis by testifying at his deposition that, "Iran is the only non-Arab country in this region. . . . According to the United States recognition, Iran is whites in their Arian background." (R. at 69, Ex. 1, p. 45). Pourghoraishi correctly explained that, in this messy business of classifying persons by race, anthropologists do indeed classify Iranians into the perhaps antiquated category of "Caucasians." *Alizadeh v. Safeway Stores, Inc.*, 802 F.2d 111, 114-15 (5th Cir. 1986). Because we look at the intent of Congress at the time it adopted § 1981, however, Pourghoraishi's testimony that Iranians are indistinguishable from other persons who are labeled "white" is inconsequential for purposes of evaluating whether he has met the first prong of the *Morris* test, as are all other definitions of race that require distinctive physiognomy, or strict adherence to taxonomical, biological or anthropological definitions. *See Saint Francis Coll.*, 481 U.S. at 613; *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387, n.7 (10th Cir. 1991) (noting that the concept of race under § 1981 is broad, extending to matters of ancestry which are normally associated with nationality, not race in a biological sense); *Jatoi v. Hurst-Euless-Bedford Hosp. Auth.*, 807 F.2d 1214, 1218 (5th Cir. 1987) (refusing to limit the protection of § 1981 to taxonomically defined racial groups), *modified* 819 F.2d 545 (5th Cir. 1987) (neither is distinct physiognomy necessary); *Alizadeh*, 802 F.2d at 114 (same). Although this circuit has never expressly addressed the question of whether those of Iranian ancestry belong to

a distinct race protected by the discrimination prohibition of § 1981, we have followed the Court's instruction in *St. Francis Coll.* to consider the matter of race broadly. *See Lalvani v. Cook County*, 269 F.3d 785, 789 (7th Cir. 2001) (applying, without comment, protections of § 1981 to a plaintiff from India), *Sanghvi v. St. Catherine's Hosp., Inc.,* 258 F.3d 570, 573 (7th Cir. 2000) (same); *Bisciglia v. Kenosha Unified Sch. Dist. No. 1*, 45 F.3d 223, 230 (7th Cir. 1995) (plaintiff should have been permitted leave to amend complaint to state a claim under § 1981 since Italians may in fact be an identifiable race protected by § 1981).

Other circuits to have considered the issue have found that Iranians may state a claim for race discrimination under § 1981. *Amini v. Oberlin Coll.*, 259 F.3d 493, 503 (6th Cir. 2001). *Daemi*, 931 F.2d 1387, n.7; *Alizadeh,* 802 F.2d at 114. Supreme Court and Seventh Circuit precedent dictate that, for the purposes of § 1981, we must view race broadly to encompass those of Iranian ancestry. Consequently, because Pourghoraishi's complaint alleges discrimination on the basis of race—Iranian—he has met the initial prong of the *Morris* test.

Under the second prong, Pourghoraishi must demonstrate that the defendants intended to discriminate against him. *Morris*, 89 F.3d at 413. Of course, the defendants could not have discriminated against Pourghoraishi on the basis of race if they were unaware of his race, a factual question both parties vigorously debate. *See Holmes v. Potter*, 384 F.3d 356, 362 (7th Cir. 2004). ("[a]n employer's lack of knowledge about a protected category rings a death knell for discrimination claims."); *Cf. East-Miller v. Lake County Highway Dept.*, 421 F.3d 558, 564 (7th Cir. 2005) (plaintiff could not prove intentional discrimination in a similar FHA burden shifting test where there was no evidence that the defendants knew the race of the plaintiff). In his brief before this court, Pourghoraishi maintains that "any reasonably aware and knowledgeable person would have

identified Mr. Pourghoraishi as middle eastern [sic], both by his appearance and speech." (Appellant's Brief at 18). To support this assertion, Pourghoraishi points to an affidavit in the record submitted by his criminal defense lawyer, Charles Graddick, who attests that upon meeting Pourghoraishi, it was apparent to him, both because of his appearance and his speech, "that he was not caucasian [sic] and that he was of middle eastern [sic] descent." (R. at 47, Ex. 1, p. 1). This declaration, however, directly conflicts with Pourghoraishi's own testimony at his deposition that he has no physical attributes that make him appear to be foreign born or of a minority race:

Q: Was there any way of determining your racial background or ethnic background from anything you were wearing or anything on your body or any attribute that you had?

Pourghoraishi: No.

Q. Is there any attribute that you identify with yourself that identifies you as from a different origin than the United States?

A. No.

Q. . . . Just from your outward appearance, is it your understanding that you look any different than anyone else?

A. I can't say that one to you, but you have to ask it from the officer how he figure out I'm not from this country.

Q. I'm asking you.

A. I don't.

Q. You don't think there's anything about you that looks—

A. No, sir.

Q.  —different than anyone else?

A.  I believe so.

(R. at 36, Ex. A, pp. 130-32). Pourghoraishi further stated at his deposition:

Pourghoraishi: . . . Iran is the only non-Arab country in this region. We are not—

Q.: Is it Persian

A:  Persian is coming from—Persian came from Germany. According to the United States recognition, Iran is whites in their Arian background. That's the reason Iran means Arian. In the course of the history, [Iranian] is Arian generation, Arian generation.

(R. at 69, Ex. 1, p. 45).

If we accept as true Pourghoraishi's deposition testimony, then we have no material issue of disputed fact. Both Pourghoraishi and the defendants agree that Pourghoraishi had no external features that would have allowed either Lindgren or Williams to identify him as Iranian or Middle Eastern or any other non-white race. And because according to both Pourghoraishi and the defendants, Lindgren selected Pourghoraishi for differential treatment *before* Pourghoraishi spoke (recall that according to Pourghoraishi, Lindgren approached Pourghoraishi as he walked to the restroom and told him, in an aggressive, hostile voice, that he had to leave the facility), Lindgren could not have heard Pourghoraishi's accent until after he made his demand and Pourghoraishi countered that he could not leave because he had to pay for fuel. By that time, however, the allegedly discriminatory deed had been done: Pourghoraishi had been singled out and asked to leave.

In short, based solely on Pourghoraishi's deposition testimony, there are no material issues of fact regarding

Pourghoraishi's dispute with Lindgren and summary judgment must be granted for Lindgren and the Flying J. This would end the matter but for the affidavit submitted by attorney Graddick which insists that Pourghoraishi both looks and sounds "middle eastern." A plaintiff cannot, however, create an issue of material fact by submitting an affidavit that contradicts an earlier deposition. *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 532 (7th Cir. 1999). When a conflict arises between a plaintiff's sworn testimony and a later affidavit or declaration, the "affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy." *Id.* at 532-33. Pourghoraishi has not asserted that either of these scenarios applies to his deposition testimony. Consequently, we must disregard Graddick's affidavit and assume for the sake of summary judgment that Lindgren would have had no reason to know that Pourghoraishi was of Middle Eastern descent. This, of course, dooms Pourghoraishi's claim against Lindgren, for in order to establish a § 1981 claim of racial discrimination in a retail transaction, Pourghoraishi must demonstrate that Lindgren had an intent to discriminate on the basis of race, which is, as we said, impossible to do if Lindgren had no way of knowing Pourghoraishi's race. The district court, consequently, properly granted summary judgment in Lindgren and Flying J's favor.

The evidence against Williams on the other hand is different. Pourghoraishi points to several pieces of evidence that Williams knew he was of a minority race. First, while Officer Williams was arresting Pourghoraishi, he allegedly told Pourghoraishi, "I'm going to send you back to your country." (R. at 36, Ex. A, p. 152). Second, he noted Pourghoraishi's race as "Pershen" [sic] on the Gary Police Department offense Report. (R. at 43, Ex. 4 to Ex. C).

Pourghoraishi's § 1981 claims, however, do not include Officer Williams or the City of Gary, so Williams' actions taken in his role as a City of Gary police officer should have no effect on the § 1981 claims against the Flying J, Lindgren, or Nakon Security. Although Pourghoraishi does not charge Williams directly with a § 1981 claim, to the extent Williams was acting as an agent of Nakon Security or the Flying J, his actions could be imputed to those entities and expose them to liability. Unfortunately, neither party's briefs on appeal address the law of agency, but the matter can nonetheless be resolved without much ado. It is undisputed that at the time Officer Williams arrested Pourghoraishi he was acting in his capacity as a City of Gary police officer. According to Williams, when he arrested Pourghoraishi he did so in his capacity as a City of Gary police officer. (R. at 36, Ex. C, p. 154). Furthermore, he testified that he switched from being a security guard for Nakon Security to a Gary police officer when he informed Pourghoraishi that if he did not calm down or leave, he would be arrested. (R. at 36, Ex. C, p. 153). And according to Pourghoraishi's own testimony, all of the indicia of racial animus and any potential actions which deprived Pourghoraishi of the ability to contract occurred after the point at which Williams began acting in his capacity as a Gary police officer—that is after the point at which he first threatened Pourghoraishi with arrest. Pourghoraishi testified that the first words out of Officer Williams' mouth were "you have to get out of here, if you don't I'm going to arrest you." (R. at 36, Ex. A, p. 149). And, as he placed the handcuffs on Pourghoraishi's wrists he said, "I'm going to send you back to your country," and then supplemented the threat with profanity. (*Id.*, pp. 143, 151-52). Officer Williams' testimony varies slightly in that he says that he first informed Pourghoraishi that he was a security guard and in that capacity asked him to lower his voice and calm down three times before switching gears to his police officer capacity and warning Pourghoraishi that he would be

arrested. (R. at 43, Ex. C, pp. 66-69). Under either scenario, however, Williams had switched roles to police officer before any allegedly illegal conduct occurred.

Furthermore, to the extent Williams interfered with Pourghoraishi's ability to contract, he did so only after he had switched into his Gary Police Department hat. Consequently, any actions by Officer Williams denying Pourghoraishi the right to complete his fuel transaction have no effect on the liability of the Flying J, Lindgren, or Nakon Security.[3] Williams actions in arresting

---

[3] It is worth mentioning the third prong of the *Morris* test, even though Pourghoraishi has failed on the first two prongs. A plaintiff satisfies the third prong of the Morris test by demonstrating that the defendants denied the alleged victims the opportunity to make a purchase by, for example, refusing admittance or service. *Morris*, 89 F.3d at 414. According to the defendants' brief, "Mr. Pourghoraishi confirmed that the fuel transaction took place in an honest fashion; he was only charged for the fuel he had intended to purchase; he was given the correct change, and was given a receipt that confirmed the entire transaction." (Appellee's Brief at 23). Thus, the defendants argue, Pourghoraishi cannot complain that he was denied the right to make and enforce a contract. To describe what was, in essence, a polite mugging as a fair and honest transaction borders on the absurd. If a credit card company broke into Pourghoraishi home in the middle of the night and stole the exact amount of money he owed—and left a receipt, of course— one doubts that he would feel he had been dealing at arms length in a fair, honest transaction. By arresting Pourghoraishi and removing him from the line for the cashier, Williams denied Pourghoraishi the opportunity to complete his transaction. As we noted, however, Pourghoraishi's complaint does not allege any § 1981 violations by Officer Williams, and because he was not an agent of Nakon Security or the Flying J at the time of the incident, his actions cannot be imputed to them. Furthermore, even if they were, Pourghoraishi has failed the first and second prongs of the *Morris* test, so it cannot be determined that

(continued...)

Pourghoraishi, however, have relevance to the latter's
§ 1983 claims to which we now turn.

*B.   Section 1983 claims.*

Pourghoraishi alleges that Officer Williams, individually
and in his official capacity as a City of Gary police officer,
violated his rights under the Fourth and Fourteenth
Amendments to the U.S. Constitution when he arrested
Pourghoraishi for trespass and disorderly conduct with-
out probable cause. Pourghoraishi seeks to enforce these
claims via 42 U.S.C. § 1983, which provides that "[e]very
person who, under color of any statute, ordinance, regula-
tion, custom, or usage, of any State or Territory or the
District of Columbia, subjects, or causes to be subjected, any
citizen of the United States or other person within the
jurisdiction thereof to the deprivation of any rights, privi-
leges, or immunities secured by the Constitution and laws,
shall be liable to the party injured in an action at law, suit
in equity, or other proper proceeding for redress . . . ." 42
U.S.C. § 1983. Williams asserts that he had probable cause
to arrest Pourghoraishi on both charges, and, even if he did
not, he was entitled to qualified immunity on both claims.
The district court agreed with Williams with respect to the
trespass claim, but held that factual disputes precluded a
finding that Williams had probable cause to arrest
Pourghoraishi for disorderly conduct. Nevertheless, because
the district court concluded that Williams had probable
cause to arrest Pourghoraishi for trespass, the district court
held that Williams was entitled to qualified immunity on
the § 1983 claim.

---

[3]  (...continued)
Pourghoraishi was denied the opportunity to contract on the basis
of his race as opposed to some other ground.

Police officers performing discretionary functions—such as determining whether they have probable cause to arrest—enjoy qualified immunity from suit unless it would have been clear to a reasonable police officer that, given the situation she confronted, her conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Sornberger v. City of Knoxville, Ill.,* 434 F.3d 1006, 1013 (7th Cir. 2006).

The threshold question in a qualified immunity defense is whether, given the facts taken in the light most favorable to the plaintiff, there is any merit to the underlying constitutional claim. *Saucier*, 533 U.S. at 200, *Norfleet v. Webster*, 439 F.3d 392, 395 (7th Cir. 2006). If so, we move on to inquire whether the right was clearly established at the time of the alleged injury; that is, whether a reasonable officer would have known that his actions were unconstitutional. *Saucier*, 533 U.S. at 202; *Anderson*, 483 U.S. at 640; *Sornberger*, 434 F.3d at 1013.

The underlying constitutional claim, as asserted by Pourghoraishi, is that Officer Williams arrested him without probable cause in violation of his Fourth Amendment rights. Williams had probable cause to arrest Pourghoraishi if he reasonably believed that, in light of the facts and circumstances within his knowledge at the time of the arrest, Pourghoraishi had committed or was committing an offense. *Payne*, 337 F.3d at 776. "[i]t is inevitable," the Supreme Court has reminded us, "that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and . . . in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." *Anderson*, 483 U.S. at 641. In other words, we must bear in mind that "the doctrine of qualified immunity leaves 'ample room for mistaken judg-

ments' by police officers." *Payne*, 337 F.3d at 776, *citing Malley v. Briggs*, 475 U.S. 335, 343 (1986).

Turning to the disorderly conduct charge, the district court determined that "because a reasonable jury could find that Williams lacked probable cause to charge Plaintiff with disorderly conduct, judgment as a matter of law on this ground is improper," (R. at 71, p. 27), a holding Williams asks us to overturn.

Whether an officer has probable cause to arrest depends on the requirements of the applicable state criminal law. *Williams v. Jagloski*, 269 F.3d 778, 782 (7th Cir. 2001). Under Indiana law, a person engages in disorderly conduct when that person "recklessly, knowingly, or intentionally: (1) engages in fighting or in tumultuous conduct; (2) makes unreasonable noise and continues to do so after being asked to stop; or (3) disrupts a lawful assembly of persons." Ind. Code § 35-45-1-3.[4] As we have noted before, at this stage of the proceedings, we must credit Pourghoraishi's version of the facts, and resist the temptation to evaluate the relative veracity of each party's facts, provided the claims are not implausible on their face. *Payne*, 337 F.3d at 770-71. This is true even when the one-sidedness of the allegations causes us to raise a brow. *Id.* at 771. We do not vouch for the truth of the facts, (*Herzog v. Village of Winnetka*, 309 F.3d 1041, 1044-45 (7th Cir. 2002)), but rather merely use them to determine whether the case can be resolved as a matter of law.

According to the facts most favorable to Pourghoraishi, he did not use "an offensive voice," he did not use profanity, he did not raise his voice. (R. at 39, Ex. 2, pp. 133-35, 149-52). In short, according to Pourghoraishi's version of events, he did not engage in even one of the enumerated behaviors in

---

[4] The statute was amended in 2002 in a manner that does not affect this litigation.

Indiana's disorderly conduct statute and consequently, Officer Williams could not have reasonably believed that Pourghoraishi was committing an offense. He did not, therefore, under Pourghoraishi's version of the facts, have probable cause to arrest Pourghoraishi for disorderly conduct.

Under the second prong of the qualified immunity test, we move on to inquire whether it would have been clear to a reasonable officer that it was unlawful to arrest Pourghoraishi for disorderly conduct. *Saucier*, 533 U.S. at 202. Because, according to Pourghoraishi's version of events, he did not raise his voice, use profanity, make unreasonable noise, or otherwise engage in any behaviors prohibited by the disorderly conduct statute, no reasonable officer could have concluded that he had probable cause to arrest Pourghoraishi. *See, e.g.*, *Payne*, 337 F.3d at 778.

This conclusion, however, does not knock Williams down for the count. The actual existence of *any* probable cause to arrest precludes a § 1983 suit for false arrest. *Morfin v. City of E. Chicago*, 349 F.3d 989, 997 (7th Cir. 2003). "Simply stated, a person arrested with probable cause cannot cry false arrest, and without a predicate constitutional violation, one cannot make out a prima facie case under § 1983." *Id.* (internal citations omitted). Consequently, if Williams had probable cause to arrest Pourghoraishi on the trespass claim, he is shielded from liability under § 1983.

Just as we did for the disorderly conduct claim, we look to Indiana law on criminal trespass to determine whether a law enforcement officer reasonably could have believed, in light of the facts and circumstances within his knowledge at the time of the arrest, that Pourghoraishi had committed or was committing trespass as described by the statute. *Payne*, 337 F.3d at 776. Indiana state law provides that "a person who: . . .(2) not having a contractual interest in the prop-

erty, knowingly or intentionally refuses to leave the real property of another person after having been asked to leave by the other person or that person's agent . . . commits criminal trespass." Ind. Code § 35-43-2-2(a)(2).

The defendants assert that it is undisputed that both Lindgren and Officer Williams asked Pourghoraishi to leave, but this simply is not so. Pourghoraishi testified at his deposition that both Lindgren and Willaims told him to leave. (R. at 39, Ex. 2, pp. 124, 140). Williams agreed, at least in regard to his own actions, that he did tell Pourghoraishi to leave (although he testified that he did so in his capacity as a Gary police officer, a point to which we will return shortly). (R. at 36, Ex. C, p. 153). Lindgren, on the other hand, testified in no uncertain terms that he did *not* ask Pourghoraishi to leave, but rather told him that he could *not* leave until he paid his bill. (R. at 50, Ex. B, pp. 68, 71-73). This certainly creates an odd dispute of material facts. In this case the facts that favor Pourghoraishi are, paradoxically, those pronounced by the defendants. The rule on summary judgment, however, requires only that we accept the facts most favorable to the non-moving party, not that we accept only the non-movant's facts. If Lindgren did not ask Pourghoraishi to leave, and Williams did so only in his capacity as a Gary police officer, than neither the owner nor agent of the property asked Pourghoraishi to leave.

Of course a police officer who is neither an owner of a property nor an agent of an owner of a property cannot create a trespass violation by asking a patron to leave, and then arrest the patron when she refuses to do so. The right to shoo away strangers belongs to the owner of the property and her agents. *See* Ind. Code § 35-43-2-2(a)(2) (a person commits trespass only when refusing to leave "having been asked to leave by the [the property owner] or that person's agent.") As noted before, neither party's briefs address the issue of when an off-duty police officer employed as a security guard acts as an agent for the private

employer, and Indiana law addressing this question is less than crystal clear. The Fourth District of the Indiana Appellate Court has stated, "[p]olice officers who work as security guards when off duty, shed their cloak of State Agency and become agents of the private hiring authority." *Rode v. State*, 524 N.E.2d 797, 800 (Ind. Ct. App. 1988), citing *Bowman v. State*, 468 N.E.2d 1064, 1068, n.1 (Ind. Ct. App. 1984). The First District of that same court, however, rejected *Bowman* and *Rode* and followed its earlier precedent holding that the agency question required a highly factual inquiry into the nature of the acts performed and the manner in which security guards identified themselves. *Owen v. Indiana*, 490 N.E.2d 1130, 1134-36 (Ind. App. 1986); *accord Tapp v. State*, 406 N.E.2d 296, 302 (1980).

Although it is undisputed that at the time of the arrest, Williams was acting in his capacity as a City of Gary police officer, there are conflicting facts regarding Williams' capacity when he asked Pourghoraishi to leave.[5] Lindgren testified that he did not want Pourghoraishi to leave without paying, did not want Williams to arrest Pourghoraishi, and did not ask Williams to arrest Pourghoraishi. (R. at 50, Ex. B, pp. 71-73). Williams testified that he received the authority to ask Pourghoraishi to leave both from "himself" and from Lindgren. (R. at 43, Ex. C, p. 84). On the other hand, Williams also testified that Lindgren never told or suggested to him that he get Pourghoraishi out of the store. (*Id.* at p. 70). He also

---

[5] We note that this is a different inquiry from the one that asks whether an off-duty police officer is acting under color of state law for § 1983 liability purposes—an inquiry, resolved by federal law, that turns on the nature of the specific acts the police officer performed. *See Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995). It is clear and undisputed, that at the time Williams arrested Pourghoraishi he was acting under color of state law.

testified that when he asked Pourghoraishi to leave, he had switched roles from being a security guard for the Flying J to a Gary police officer:

Q. So at some point in your mind, you changed from being security guard and put on your Gary Police Officer hat?

A. Correct.

Q. When was, in your mind, that point when you stopped being a security guard and started being a Gary police officer?

A. I informed Mr. Pourghoraishi that I was also a Gary police officer and that at which point if he did not calm down **or leave**, that's when I told him he would be arrested.

(R. at 36, Ex. C, p. 153) (emphasis ours). Pourghoraishi, on the other hand, testified that Williams told him that the reason he charged Pourghoraishi with trespass was because Lindgren was Williams' boss and had required him to charge in this manner. (R. at 50, Ex. A, pp. 187, 188, 230, 244) (R. at 36, Ex. A, p. 194). The defendants object to Pourghoraishi's alleged use of hearsay as evidence that Lindgren directed Officer Williams' actions. The district court judge declined to rule on the hearsay question, finding it moot in light of his ruling on the trespass claim. For purposes of summary judgment, we need not resolve the dispute over the admissibility of this evidence, for even without it, there remains a critical dispute of material fact that precludes summary judgment on the § 1983 claim against Officer Williams for the trespass arrest. Pourghoraishi claims that both Lindgren and Williams told him to leave. (R. at 39, Ex. 2 pp. 124, 140). Williams testified that he did tell Pourghoraishi to leave, but did so in his capacity as a Gary police officer (R. at 36, Ex. C, p. 153), and Lindgren testified that he never requested that Pourghoraishi leave. (R. at 39, Ex. 3, pp. 68, 71-73). Thus

with or without the disputed hearsay testimony, we cannot resolve, as a matter of law, that Williams had probable cause to arrest Pourghoraishi. Again, taking the facts in the light most favorable to Pourghoraishi, when Williams asked Pourghoraishi to leave, he was acting solely in his capacity as a police officer and not as an agent of the Flying J.

To determine whether Williams had qualified immunity, one must know whether the facts apparent to the arresting officer would have caused a reasonable officer to believe there was probable cause. *Payne*, 337 F.3d at 776. At this stage of the litigation, however, there are critical disputes over what facts were apparent to Officer Williams at the time of the arrest, primarily whether Lindgren had asked Pourghoraishi to leave and whether Officer Williams had the authority to ask Pourghoraishi to leave.[6] *See Morfin*, 349 F.3d at 1000, n.13. In short, did Williams have the authority to create the condition precedent to the crime? This is a question that must be resolved by a trier of fact.

Once all of the federal claims had been dismissed, the district court dismissed the remaining state court claims (for false arrest, false imprisonment, intentional infliction of emotional distress, and tortious interference with a business relationship), under 28 U.S.C. § 1367(c)(3), treating them as supplemental to Pourghoraishi's federal claims.

---

[6] Pourghoraishi does not argue that Lindgren has any liability under § 1983, so even if, on remand, a trier of fact were to determine that Williams acted only at the behest of Lindgren, any claim against Lindgren under § 1983 has been waived. *Compare Pourghoraishi v. Flying J*, No. 2:03-CV-269, slip op. at 21-31(N.D. Ind. Dec. 13, 2004) *with Wilson v. McRae,* 413 F.3d 692, 693 (7th Cir. 2005) (plaintiff alleged that the private shopkeeper should be treated as a state actor because, plaintiff claimed, he had struck a deal with the police to arrest anyone the shopkeeper designated).

Pourghoraishi, however, asserted not only that the district court had supplemental jurisdiction, but also that the court had jurisdiction pursuant to 28 U.S.C.A. § 1332 since the controversy is between citizens of different states and the amount in controversy exceeds $75,000. (R. at 1). None of the defendants challenged Pourghoraishi's jurisdictional claims, and this court has no reason to believe that the claim was made in bad faith, or that it appears to a legal certainty that the claim is really for less than the jurisdictional amount. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541-43 (7th Cir. 2006). Consequently, on remand, the district court must entertain the viable state law claims.

In his final claim on appeal, Pourghoraishi objects not only to the district court's grant of summary judgment for Williams, but also to the sua sponte grant of summary judgment to the City of Gary and Officer Williams in his official capacity. When a plaintiff sues an individual officer in his official capacity, the suit is treated as if the plaintiff has sued the municipality itself. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). A municipality can have no liability under § 1983 simply because it employs the alleged wrongdoer. *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To state a claim against a municipality under § 1983, a plaintiff must identify a municipal policy or custom that caused the injury. *Id.*

Neither the City of Gary, nor Willaims in his official capacity filed a separate motion for summary judgment. Nevertheless, the district court dismissed all of the claims against them with prejudice, reasoning that Pourghoraishi had failed to allege the existence of an unconstitutional policy or custom—a prerequisite to any constitutional claim against a municipality. *Monell*, 436 U.S. at 690-91. Although Pourghoraishi objects to the district court's sua sponte grant of summary judgment, the district court's actions might better be described as a sua

sponte grant of a motion to dismiss for failing to state claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In either case, a court cannot sua sponte enter summary judgment or dismiss a complaint without notifying the parties of its intentions and allowing them an opportunity to cure the defect in the complaint or to respond. *English v. Cowell*, 10 F.3d 434, 437 (7th Cir. 1993); *see also Celotex v. Catrett*, 477 U.S. 317, 326 (1986) (district courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence); *Acequia, Inc. v. Prudential Ins. Co. of Am.*, 226 F.3d 798, 807 (7th Cir. 2000) ("a district court is permitted to enter summary judgment sua sponte if the losing party has proper notice that the court is considering granting summary judgment and the losing party has a fair opportunity to present evidence in opposition.") Furthermore, "[w]here one defendant succeeds in winning summary judgment on a ground common to several defendants, the district court may also grant judgment to the non-moving defendants, if the plaintiff had an adequate opportunity to argue in opposition." *Acequia,* 226 F.3d at 807. Although Pourghoraishi's claims against Officer Williams in his official capacity and the City of Gary appear to be the same as those lodged against the remainder of the defendants, claims against a municipality require unique allegations that Pourghoraishi did not have the opportunity to assert.

The party opposing summary judgment has no obligation to address grounds not raised in a motion for summary judgment. *Titran v. Ackman*, 893 F.2d 145, 148 (7th Cir. 1990) ("When a party moves for summary judgment on ground A, the opposing party need not address grounds B, C, and so on; the number of potential grounds for (and arguments against) summary judgment may be large, and litigation is costly enough without requiring parties to respond to issues that have not been raised on pain of

forfeiting their position.") Although it seems hard to imagine that Pourghoraishi could adduce proof that the City of Gary has a policy of arresting Iranians without probable cause or of arresting citizens for trespass or disorderly conduct without probable cause, due process requires that Pourghoraishi have the opportunity to attempt such a claim if he believes, in good faith, that the allegations have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for discovery. *See* Fed. R. Civ. P. 11(b)(2).

For the reasons asserted above, we affirm the district court's grant of summary judgment for the Flying J, Steve Lindgren, and Nakon Security on the § 1981 claims and the state law claims, and reverse the grant of summary judgment for Officer Williams and the City of Gary, Indiana, on the claims brought under 42 U.S.C. § 1983, and the relevant state law claims. We remand for further proceedings consistent with this decision. All parties to bear their own costs.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—4-20-06