FILED

Aug 14 2023, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Charles E. Traylor
Jeffrey B. Kolb
Kolb Roellgen & Traylor LLP
Vincennes, Indiana

Abraham L. Ramsey,
Certified Legal Intern
Indiana University Maurer
School of Law
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Steven J. Hosler
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Marion L. Young, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | August 14, 2023 <br><br> Court of Appeals Case No. <br> 22A-CR-2923 <br><br> Appeal from the Knox Superior Court <br><br> The Honorable Brian M. Johnson, Judge <br><br> Trial Court Cause No. <br> 42D02-2007-CM-352 |

**Opinion by Judge Tavitas**
Judges Crone and Brown concur.

**Tavitas, Judge.**

## Case Summary

[1] Following a bench trial, Marion Young was convicted of trespass, a Class A misdemeanor. Young appeals and claims that the State failed to present sufficient evidence to support his conviction. We agree and, accordingly, reverse.

## Issue

[2] Young presents one issue, which we restate as whether the State presented sufficient evidence to support his conviction for criminal trespass.

## Facts

[3] Some time before November 24, 2019, the control division of the Vincennes Police Department ("VPD") received emails stating that Red's Country Store ("RCS") in Vincennes requested an extra patrol of RCS's property. "They believed that transients were sleeping under their . . . cargo trailers on the side of the building, and so during the email[,] they requested we . . . remove anyone that was not allowed on the property." Tr. Vol. II p. 6.

[4] On November 24, VPD Captain Harold Hensley was on patrol and drove by RCS. He saw no one there, so he went to a nearby Subway restaurant and spoke with an employee there. This employee directed Captain Hensley to an individual, later identified as Young, who "was just now walking out from the side of the building." *Id*. Young was "disheveled, covered in gravel dust, [and] covered in grass." *Id*. at 7. Captain Hensley approached Young, but Young refused to provide Captain Hensley with his name, explain why he was there,

or provide him with any indication that he had an interest in the property. "Based on that, the decision was made based on the extra patrol and the fact that they'd asked us to act as an agent of the store, [Young] was asked to leave the property." *Id.* Young refused. Captain Hensley tried to reason with Young and get him to leave the property. Young still refused. Young then went on a "tirade" about how "the entire city is private property," and began to curse. *Id.*

[5] Realizing that he was not going to persuade Young to leave the property, Captain Hensley, now assisted by an unknown officer, attempted to take Young into custody. Young resisted, and the police had to take him to the ground to subdue him. Captain Hensley took Young to jail, where jail staff identified him as Marion Young. The next day, Captain Hensley spoke with the owner of RCS, Mark Pepmyer, who was unfamiliar with Young and stated that Young had no interest in the RCS property.

[6] On July 27, 2020, the State charged Young with one count of criminal trespass, a Class A misdemeanor. A bench trial was held on November 10, 2022. At trial, the State's only witness was Captain Hensley, who testified to the facts recounted above. Young's defense counsel argued that the State failed to prove that the VPD officers were acting as RCS's agents at the time of the arrest and, therefore, had no authority to ask Young to leave. The trial court found Young guilty as charged and sentenced him to time served, with credit for 159 actual days served plus 159 days of good-time credit. Young now appeals.

## Discussion and Decision

[7] Young argues that the State failed to present sufficient evidence to support his conviction for criminal trespass. "Claims of insufficient evidence 'warrant a deferential standard, in which we neither reweigh the evidence nor judge witness credibility.'" *Stubbers v. State*, 190 N.E.3d 424, 429 (Ind. Ct. App. 2022) (quoting *Powell v. State*, 151 N.E.3d 256, 262 (Ind. 2020)), *trans. denied*. On appeal, "[w]e consider only the evidence supporting the judgment and any reasonable inferences drawn from that evidence." *Id*. (citing *Powell*, 151 N.E.3d at 262). "'We will affirm a conviction if there is substantial evidence of probative value that would lead a reasonable trier of fact to conclude that the defendant was guilty beyond a reasonable doubt,'" and we will affirm a conviction "'unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id*. (citing *Powell*, 151 N.E.3d at 262). The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id*. (citing *Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007); *Sutton v. State*, 167 N.E.3d 800, 801 (Ind. Ct. App. 2021)).

[8] To convict Young of criminal trespass as charged, the State was required to prove beyond a reasonable doubt that Young, "not having a contractual interest in the property, knowingly or intentionally refuse[d] to leave the real property of another person after having been asked to leave by the other person or that person's agent." Ind. Code § 35-43-2-2(b)(2). For purposes of the criminal

code, "[e]xcept as provided in subsection (b),[1] 'agent' means an operator, a manager, an adult employee, or a security agent employed by a store." Ind. Code § 35-31.5-2-12. Thus, to convict Young as charged, the State was required to prove three elements: (1) Young did not have a contractual interest in the real property; (2) Young knowingly or intentionally refused to leave the real property; and (3) Young was asked to leave by the owner of the real property, or an agent of the owner (an operator, manager, adult employee, or security agent employed by a store). Young attacks the sufficiency of the State's evidence on several grounds, one of which is that the State failed to prove that Young was asked to leave by RCS or RCS's agent.

[9] Here, the State's only witness was Captain Hensley. Captain Hensley told Young to leave the property,[2] and Young refused to do so. Young's refusal amounted to criminal trespass, however, only if the person who asked him to leave was either the owner of the property or the owner's agent. Young contends that there was insufficient evidence that Captain Hensley was an "agent" of RCS. We agree.

---

[1] Subsection (b) provides, "'[a]gent', for purposes of IC 35-48 [controlled substances], has the meaning set forth in IC 35-48-1-5." Indiana Code Section 35-48-1-5 in turn provides that "'[a]gent,' means an authorized person who acts on behalf of, or at the direction of, a manufacturer, distributor, or dispenser, but it does not include a common contract carrier, public warehouseman, or employee of the carrier or warehouseman." This definition is applicable only to offenses under the controlled substances portion of the criminal code—Indiana Code Article 35-48—and is inapplicable here.

[2] We assume for the sake of our discussion that Young was on the property of RCS at the time Captain Hensley spoke with him. The record is unclear, however, as to precisely where Young was at the time. Captain Hall did not explicitly testify that Young was on RCS property; he simply testified that, after speaking with an employee at Subway, he was directed to a man who was "just now walking out from the side of the building," without indicating which building he meant. Tr. Vol. II p. 6.

[10] We acknowledge that Captain Hensley testified that "they," presumably RCS, had asked VPD "to act as an agent of the store." *Id.* at 7. We have held before, however, that the testimony of a police officer, by itself, that he was acting as an agent of the property owner is insufficient to establish that the officer was in fact an agent of the owner. *See Glispie v. State*, 955 N.E.2d 819, 822 (Ind. Ct. App. 2011) ("It is a well-established rule that agency cannot be proven by the declaration of the agent alone.")[3] (citing *United Artist Theatre Cir., Inc. v. Ind. Dep't of State Revenue*, 459 N.E.2d 754, 758 (Ind. Ct. App. 1984)).

[11] The only other indication that Captain Hensley was acting as an agent of RCS was his testimony that someone from RCS had asked the police to conduct extra patrols of the property and "remove anyone that was not allowed on the property." Tr. Vol. II p. 6. Even so, this does not show that Captain Hensley, or any other VPD officer was "an operator, a manager, an adult employee, or a security agent employed by a store." I.C. § 35-31.5-2-12(a).

[12] We have held before that "'a police officer who is neither an owner of a property nor an agent of an owner of a property cannot create a trespass violation by asking a patron to leave and then arrest the patron when [he] refuses to do so.'" *Glispie*, 955 N.E.2d at 823 (quoting *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 763 (7th Cir. 2006) (applying Indiana law)); *see also Larsen v. Fort Wayne Police Dep't*, 825 F. Supp. 2d 965, 978-79, (N.D. Ind. 2010) ("[I]t is

---

[3] *Glispie* was decided before the adoption of Indiana Code Section 35-31.5-2-12. There is nothing in the language of this statute, however, that would alter the holding in *Glispie* that agency cannot be proven by the declaration of the agent alone.

clearly established that an officer acting in his official capacity may not arrest a person for criminal trespass when the owner of the property or the owner's agent has not asked him to leave the property.") (citing *Pourghoraishi*, 449 F.3d at 763). *Cf. Berry v. State*, 4 N.E.3d 204, 206 (Ind. Ct. App. 2014) (holding that evidence was sufficient to show that police officers had authority to bar defendant from entering apartment property where officers were working off duty as paid security guards for the apartment complex).

[13] Accordingly, even if we consider only the evidence that favors the trial court's judgment and all reasonable inferences that can be drawn from this evidence, there was simply no evidence presented that establishes that Captain Hensley or any other VPD officer was an "agent" of RCS as that term is defined by the relevant statute. Because there was no evidence that Young was asked to leave RCS property by either the owner of that property, or an agent of that property, the State did not prove one of the essential elements of criminal trespass.[4]

[14] We recognize that our holding today may seem to place an impractical burden on police officers. Obviously the State has an interest in keeping unwanted persons from occupying or using the land of a third party without that property owner's consent. We can envision scenarios in which it is difficult or impractical to summon the property owner or the property owner's agent to

---

[4] The State argues that Captain Hensley was not acting as an agent of RCS but was merely conveying the message that RCS had given, i.e., to remove unwelcome persons from RCS property. Even if this were so, it does not alter the fact that the neither the owner of the RCS property nor the owner's agent ever told Young to leave the property. The only person that told Young to leave the property was Captain Hensley.

instruct an obviously unwelcome person from a property.[5] Yet it is not our role to rewrite the criminal trespass statute to reflect what we believe to be better public policy. That role belongs to the General Assembly. Our role is to apply the statute as written and look to the language of the charging information to determine whether the State has proven the necessary elements of criminal trespass.

## Conclusion

[15] Because the State failed to present evidence that either the owner of the property or the owner's agent asked Young to leave the property, the State did not present sufficient evidence to support Young's conviction for criminal trespass. We, therefore, reverse Young's conviction.

[16] Reversed.

Crone, J., and Brown, J., concur.

---

[5] For example, a police officer has been informed that unwelcome individuals have been camping in a store's parking lot, and the officer later sees individuals camping in that parking lot in the middle of the night. Under the current statute, the officer would have to summon the owner of the store or the owner's agent to instruct the unwelcome campers to leave before being able to remove them.